428 So.2d 427 (1983)
Anna Margaret Bodden, Wife of Richard ARSENAUX
v.
Richard ARSENAUX.
Nos. 82-C-1713, 82-C-2346.
Supreme Court of Louisiana.
February 23, 1983.
Rehearing Denied March 25, 1983.
Roger B. Jacobs, Jacobs, Loeffelholz & Trestman, New Orleans, for applicant.
Frank Sloan, Metairie, for respondents.
WATSON, Justice.
The primary issue is whether a wife can claim the physician-patient privilege and her right to privacy to exclude testimony about an alleged abortion in a suit for separation or divorce.
The trial court gave the wife a separation on the ground of abandonment, decreed her free from fault and awarded her custody of a minor son, Andre. Alimony and child support were fixed at $550 per month.
The husband had reconvened for a divorce, alleging that the wife obtained an abortion under an alias after his 1976 vasectomy and was therefore guilty of adultery. At trial, in 1980, Ms. Arsenaux was asked, in statement form, if she became pregnant in October of 1978. She answered by saying, "You're lying." (Tr. 100) An objection to the question was sustained on the basis of the physician-patient privilege in LSA-R.S. *428 13:3734[1] and the wife's constitutional right to privacy.
The court of appeal reversed the trial court judgment on the ground that the statutory privilege and the constitutional right to privacy had been waived by the wife's contention that she was free from fault. Arsenaux v. Arsenaux, 417 So.2d 856 (La. App. 4 Cir.1982). According to the court of appeal, fundamental fairness required that the evidence be admitted for impeachment purposes. Because there was no allegation in the wife's pleadings of a change in circumstances since a previous award of $500 per month for alimony and child support, the trial court's award of $550 per month was reduced to $500. The matter was remanded for further proceedings.
A writ was granted to review the judgment of the court of appeal. 420 So.2d 450, 452 (La., 1982).

FACTS
The parties' final separation, on or about November 8, 1979, was their third. Both Andre, age nine, and Claudia Nadeen Williams, age fourteen, testified that their father/stepfather was frequently drunk and unruly. Marie Regina Dubon, who babysat for the couple, and Mrs. Andrea Bfeiffer testified about the husband's frequent drunkenness and bruises on the wife's legs. A co-worker of the wife, Mrs. Jean Sullo Drews, said that Arsenaux was usually drinking but was always nice; she had also observed bruises on the wife. Ms. Arsenaux testified that her husband had a drinking problem and other emotional difficulties. He frequently struck her and hurt the children when he was drunk. The husband, his mother, father, aunt, psychologist, and James Fitzmorris, Sr., testified on his *429 behalf. Proffers number eight and nine are depositions by two men alleged to be the wife's boyfriends. These depositions were excluded by the trial court but found admissible by the court of appeal. Both men said their relationship with Ms. Arsenaux was friendly but not intimate.
According to Dr. Hannie, the husband's psychologist, Arsenaux's heavy drinking was a reaction to the stressful situation in the marriage, triggered by the conviction that his wife was engaging in sexual activities with other men for financial gain. Dr. Hannie had seen Arsenaux fourteen times since May of 1980, but had not done any clinical testing. He found Arsenaux to be vindictive toward his wife. Although Arsenaux's emotional responses and conclusions are exaggerated, this witness was convinced that Arsenaux believed in his wife's misconduct.
Dr. Edward F. Fuchs, a psychiatrist and neurologist, testified that the two children testified quite truthfully. In his opinion they were alert, oriented, and not depressed. Andre, in particular, had angry feelings against his father because of his drinking. In this witness' opinion, Arsenaux's testimony sounded like that of someone in a paranoid state with a single fixed idea.
Ms. Arsenaux allegedly underwent an abortion on October 28, 1978, under the name of Margarita Vargus. This was approximately a year before the final separation of the parties.[2] Proffer number seven by the defendant husband is the medical record of Anna Margarita Vargus at the Causeway Medical Suite. Proffer number five is the deposition of a handwriting expert who said that Ms. Arsenaux's signature appeared on an abortion consent form in that medical record. This proffer is the only evidence of connexity between Ms. Arsenaux and Ms. Vargus.

THE MEDICAL PRIVILEGE
LSA-R.S. 13:3734 provides that, in civil cases, a patient has a privilege to refuse to disclose any communication made to a health care provider which enables the provider to diagnose, treat, prescribe or act for the patient except in certain instances. The exceptions are: the contest of a will or an instrument transferring property by one deceased; death cases; workmen's compensation suits; and personal injury actions.[3] Suits for separation and divorce are not included in the enumerated exceptions.
Communication is defined in the statute as:
"... [T]he acquiring, recording or transmittal, of any information, in any manner whatsoever, concerning any facts, opinions or statements necessary to enable the health care provider to diagnose, treat, prescribe or to act for the patients; said communications may include, but are not limited to any and all medical records, office records, hospital records, charts, correspondence, memoranda, laboratory tests and results, x-rays, photographs, financial statements, diagnoses and prognoses." LSA-R.S. 13:3734 A(5).
The medical record of Anna Margarita Vargus is a communication under the explicit wording of the statute.[4]
The statute is quite clear about which civil cases constitute a "consent" or waiver of the medical privilege. See Wing v. *430 Wing, 393 So.2d 285 (La.App. 1 Cir.1980). Since the legislature has delineated the civil suits which waive the privilege, an additional judicial exception would contravene the statute and flout the law. LSA-C.C. art. 13.[5] Because Ms. Arsenaux's physical condition is not an essential element of her suit, no implied waiver of the privilege should be inferred. Compare Randa v. Bear, 50 Wash.2d 415, 312 P.2d 640 (1957).
Not only is the trial court's interpretation of the statute correct, but there are strong constitutional considerations weighing against admission of this evidence. The Louisiana Constitution of 1974 provides in Article 1, § 5, that "[e]very person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy...." Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) recognized a constitutional right to privacy concerning abortion in the early stages of pregnancy. Planned Parenthood of Cent. Mo. v. Danforth, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976) held that a woman is protected from husbandly as well as governmental intrusion in deciding whether to terminate a pregnancy. This constitutional right to privacy is not absolute but can only yield to a compelling state interest. Roe v. Wade, supra. No compelling state interest requires an invasion of the right to privacy here. See The Abortion Privacy Doctrine: A Compendium and Critique of Federal Court Abortion Cases by Professor Lynn D. Wardle.[6]
The court of appeal erred in reversing the trial court's ruling on evidence relative to the alleged abortion. The wife did not waive her statutory privilege and right to privacy by filing suit for separation and contending that she was free from fault.

ALIMONY AND CHILD SUPPORT
In its per curiam denial of application for rehearing, the court of appeal stated:
"The husband's application for rehearing points out that no change in alimony pendente lite and child support had been sought by any pleadings subsequent to the July 16, 1980 judgment. At the trial on November 20, resulting in the November 10 judgment now on appeal, counsel stipulated that there had been no change in circumstances pleaded. We therefore conclude that in place of an award for child support there should have been a simple continuation of the July 1980 award of $500 for both alimony pendente lite and child support while the mother's temporary custody continues...." 417 So.2d at 860.
In her petition for separation filed October 24, 1979, the plaintiff-wife requested child support and alimony pendente lite in the amount of $1,000 per month. This amount, of course, represents an increase from the sum of $500 per month fixed by judgment of July 16, 1980. At trial, on November 20, 1980, counsel admitted that no change of circumstances had been pleaded, but stated that there was in fact a change of circumstances. There was ample evidence at trial to support an increase in the amount of alimony and child support. The court of appeal erred in reducing the award merely because the phrase "change of circumstances" was omitted from the wife's pleadings.

DECREE
For the foregoing reasons, the judgment of the court of appeal is reversed; the judgment of the trial court is reinstated.[7]
REVERSED AND TRIAL COURT JUDGMENT REINSTATED.
*431 DIXON, C.J., concurs.
MARCUS and LEMMON, JJ., dissent and assign reasons.
BLANCHE, J., dissents being of the opinion that Plaintiff waived the physician-patient privilege.
MARCUS, Justice (dissenting).
While La.R.S. 13:3734 grants a privilege to a patient to refuse to disclose any conversations relating to medical information concerning the patient and provides certain instances where the privilege does not apply, I do not consider that this precludes a waiver of the privilege by the patient under certain circumstances other than those where the privilege does not apply. I consider the wife waived her privilege in the instant case by seeking alimony on the basis that she was free from fault and thus placed at issue whether she obtained an abortion under an alias after the husband's vasectomy and therefore guilty of adultery as contended by her husband. Accordingly, I respectfully dissent.
LEMMON, Justice, dissenting.
When Mrs. Arsenaux sought a judicial determination of her entitlement to alimony and alleged she was free from fault, she impliedly waived any medical privilege that would prevent her husband from introducing hospital records that proved she underwent an abortion long after her husband's successful vasectomy. And when she denied becoming pregnant in October, 1978, as part of her evidence in support of the alimony claim, she again waived any medical privilege that would preclude her husband from presenting this otherwise admissible impeaching evidence on this critical fact.[1]
Courts of justice simply cannot permit a litigant, who asserts a claim for alimony based on freedom from fault and gives possibly false testimony in support of that claim, to interpose a patient-doctor privilege (designed for other purposes) and exclude medical evidence which conclusively shows her fault.
NOTES
[1] LSA-R.S. 13:3734 provides, in pertinent part:

"B. Except as hereinafter provided, in civil cases, proceedings before a medical review panel, pursuant to R.S. 40:1299.47 and in medical and dental arbitration proceedings, pursuant to R.S. 9:4230-4236, and in proceedings and investigation preliminary to all such actions, a patient or his authorized representative, has a privilege to refuse to disclose and to prevent a health care provider from disclosing any communication, wherever made, relating to any fact, statement or opinion which was necessary to enable that health care provider or any other health care provider to diagnose, treat, prescribe or act for the patient.
"C. There shall be no privilege for any communication under this Section where:
"(1) Either before or after probate, upon the contest of any will executed, or claimed to have been executed, by such patient, or after the death of such patient, in any action involving the validity of any instrument executed, or claimed to have been executed by him, conveying or transferring any immovable or movable property, any health care provider who has attended said patient may disclose any communication regarding the patient which was necessary to enable him to diagnose, treat, prescribe or to act for such deceased.
"(2) After the death of the patient, the executor of his will, or the administrator of his estate, or the surviving spouse of the deceased, or if there be no surviving spouse, the children of the deceased personally, or if minors, by their representative, may give such consent, in any action or proceeding brought to recover damages on account of the death of the patient, to permit any health care provider who may have attended said patient at any time to disclose any communication regarding said patient which was necessary to enable him to diagnose, treat, prescribe or act for such deceased.
"(3) If any person brings an action to recover damages, in tort or for workmen's compensation under federal or state laws, for personal injuries, such action shall be deemed to constitute a consent by the person bringing such action that any health care provider who has attended such person at any time may disclose any communication which was necessary to enable him to diagnose, treat, prescribe or act for said patient.
"(4) The bringing of an action, to recover for the death of a patient, by the executor of his will, or by the administrator of his estate, or by the surviving spouse, or if there be no surviving spouse, by the children personally, or, if minors, by their representative, shall constitute a consent by such executor, administrator, surviving spouse, or children or representative to the disclosure of any communication by any health care provider who may have at any time attended said deceased.
"(5) If any health care provider reasonably believes in good faith that any legal proceeding enumerated in Paragraphs (3) or (4) under this Subsection, has or may be instituted for or on behalf of said patient, such health care provider may disclose any communication acquired by him which was necessary to enable him to diagnose, treat, prescribe or act for said patient."
[2] Because of the year's lapse of time between the alleged abortion and the parties' final separation, its relevance to the cause of their parting is questionable.
[3] Separate statutes, LSA-R.S. 15:476 and 15:478, provide a physician-patient privilege in criminal cases.
[4] Other states which have "communication" statutes interpret the word as extending to all information secured by a doctor. See, for example, Heuston v. Simpson, 115 Ind. 62, 17 N.E. 261 (1888); Burns v. City of Waterloo, 187 Iowa 922, 173 N.W. 16 (1919); McKee v. New Idea, Inc., 44 N.E.2d 697 (1942); Smoot v. Kansas City, 194 Mo. 513, 92 S.W. 363 (1906); F____ v. F____, 333 S.W.2d 320 (Mo. App.,1960); and Hansen v. Sandvik, 128 Wash. 60, 222 P. 205 (Wash., 1924). However, as pointed out in People v. De France, 104 Mich. 563, 62 N.W. 709 (1895), "... the spirit of the act would not include a case where the infirmity was apparent to everyone on inspection." 62 N.W. 711.
[5] LSA-C.C. art. 13 provides:

"When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit."
[6] William S. Hein & Co., Inc., Buffalo, N.Y., 1980.
[7] The husband argues that the expert witness fee of Dr. Fuchs was erroneously taxed to him individually rather than against the community. This action was apparently taken after the husband appealed. A judgment taxing the expert witness fee does not appear in the record: the matter cannot be considered.
[1] As the court of appeal pointed out, not even the constitutional protection against self-incrimination can exclude evidence that would impeach false testimony.