557 So.2d 1046 (1990)
Harold M. WHEELAHAN, III
v.
Marguerite Vicknair WHEELAHAN.
No. 89-CA-0302.
Court of Appeal of Louisiana, Fourth Circuit.
February 22, 1990.
Writ Denied April 20, 1990.
*1047 Robert C. Lowe, Terence L. Hauver, Lowe, Stein, Hoffman & Allweiss, New Orleans, for plaintiff-appellee.
Kevin M. Thompson, Bennett Wolff, New Orleans, for defendant-appellant.
Before BARRY and WARD, JJ., and HUFFT, J., Pro Tem.
BARRY, Judge.
Mrs. Wheelahan appeals a legal separation judgment which finds her mutually at fault with Mr. Wheelahan.
Harold Wheelahan and Marguerite Vicknair were married December 28, 1974 and had two children, Michael and David. In 1987 Mr. Wheelahan petitioned for a legal separation based on cruel treatment, i.e., his wife's persistent and unjustified refusal to have sexual intercourse, foul moods which resulted in her withdrawal from the family unit, and refusal to communicate. Mrs. Wheelahan answered and reconvened claiming cruel treatment, adultery and abandonment. A judgment of divorce based on having lived separate over one year was rendered September 22, 1988 and has not been appealed.

TRIAL TESTIMONY
Mrs. Wheelahan was called under the Act and testified that her husband left the matrimonial domicile on June 3, 1987 and she did not know what caused him to leave. She claimed she expressed an unconditional desire for him to return. She testified that on a routine day her husband would wake up Michael, feed him and take him to school while she slept. She would take care of David, the younger child. When Mr. Wheelahan came home in the evening around 6:00 p.m. he would take over the two boys and she would go upstairs to have time for herself. Mrs. Wheelahan took pottery classes a couple of nights a week during the last few years. Mr. Wheelahan would feed the boys, bathe them, read to them and put them to bed. Mr. Wheelahan cooked and made groceries.
Mrs. Wheelahan conceded that occasionally her husband complained about the messy condition of the house, but he had high standards. She had part-time sitters Monday, Tuesday, Thursday, and Friday and a sitter on Saturday nights so they could go out. A laundress came in on Wednesday. She had cleaning help on Tuesday and Saturday.
Mrs. Wheelahan testified that she did not have sex with her husband during the two years prior to their physical separation. She recounted two episodes of "painful" sexual intercourse in May, 1985 after Mr. Wheelahan had been drinking. She stated that she felt used and degraded and not loved from that point onward. She claimed she spoke to him after the first incident, but it happened again. About six months *1048 prior to their physical separation Mr. Wheelahan, who had voluntarily undertaken therapy, suggested that she attend sessions with Paul Shurte to obtain help with her problem of intimacy. When asked whether she mentioned to Mr. Shurte the painful sexual experiences, she stated that she could not talk about it to anyone. She said there had been discussion of their lack of intimacy partially due to her low self-esteem. Part of the therapy involved "sensate focusing" which involved focusing on physical contact (such as a massage) without sexual intercourse. She testified that she and Mr. Wheelahan agreed to abstain from sexual intercourse during that time.
Mrs. Wheelahan testified that several weeks before their physical separation Mr. Wheelahan took her on a cruise, but they did not have sex. She said that she weighed about 250 pounds at the time of their separation. Although Mr. Wheelahan never verbally criticized her body, she felt that he was not attracted to her because of her weight. She testified that Mr. Wheelahan tried repeatedly to engage in sexual intercourse but she was afraid. She admitted that her response on numerous occasions was: "I can't deal with this." Mrs. Wheelahan admitted she never initiated sexual contact. She said that during the last two years of the marriage her father was dying of cancer and she was very unhappy.
On direct examination Mrs. Wheelahan testified the breakup of the marriage was due to Mr. Wheelahan's drinking, the lack of closeness, the two painful sexual episodes, and another woman, Dawn Adams. She stated that she first worried about Mr. Wheelahan's drinking problem in 1983 when she attended an intervention class at DePaul Hospital. He had limited his drinking for awhile, but started again in 1984. She noted that his mother expressed concern about his drinking.
Mrs. Wheelahan stated that her husband was primarily interested in sex after he had been drinking. She felt that at that point she was just being "used." She claimed Mr. Wheelahan did not attempt to have sex during the cruise. She thought therapy was a good idea and felt they had made progress when Mr. Wheelahan left.
During further cross-examination Mrs. Wheelahan admitted that her husband (a lawyer) had never missed a day of work because of the alleged drinking problem. She stated that he drank while taking care of the kids in the evening, but still allowed him to care for them. She could not explain why she answered in her deposition that she did not know what caused the separation. She stated that other than the two times when she felt hurt, Mr. Wheelahan had been a gentle and caring person through all their years of marriage.
Mrs. Dorothy Wheelahan, Mr. Wheelahan's mother, testified that she visited the house several times a week to pick up the children, but did not know about the sexual problem before the couple physically separated. She said her daughter-in-law was very cross with the children. After the separation Mrs. Marguerite Wheelahan confided that she had a problem being intimate. Mr. Wheelahan's mother stated that she was concerned about her son's drinking. She does not drink and felt that taking a second drink was improper for anyone. She stated that her daughter-in-law had spoken to her about her son's drinking problem.
Ms. Peggy Wheelahan, Mr. Wheelahan's sister, testified that she visited the house once or twice a week during the last two years of the marriage and Mrs. Wheelahan was usually very disagreeable. Her brother took supervision of the boys when he came home between 6:00 and 6:30 p.m. She said that on several occasions Mrs. Wheelahan spoke about difficulty in having sex with her husband, but Mrs. Wheelahan never blamed Mr. Wheelahan for the problem. During cross examination of Peggy Wheelahan, Mr. Wheelahan's counsel stipulated that his client was at fault within a month prior to the physical separation by having an affair. Peggy Wheelahan stated she did not know about the affair. She testified that Mrs. Wheelahan had expressed concern about her husband's drinking.
*1049 Mr. Wheelahan testified that after he separated from his wife on June 3, 1987, she said he could come back pursuant to certain stipulations: that he would be home by 6:00 p.m., that he take complete care of the kids at that time, that he not open an office in Los Angeles, and that he quit drinking for sixty days. Mrs. Wheelahan offered to work on her sexual hangup.
Mr. Wheelahan denied having a drinking problem. He stated that he works 5-½ days a week as a maritime personal injury attorney and never missed work due to drinking. He said that he sometimes drank as he fixed dinner (about every other day). Mr. Wheelahan testified that his wife never asked him to seek help for a drinking problem. He noted that his mother was very sensitive about alcohol.
He said the last sexual intercourse with his wife was in May, 1985. He confirmed that on the cruise they had no sex, although he tried. Mr. Wheelahan said his wife never told him that he hurt her during sexual intercourse, nor did she mention it in therapy or during her deposition.
Mr. Wheelahan stated that his wife went to Missy Riley, a board certified social worker, in May, 1986 and he attended several sessions, but the situation did not improve. He subsequently went to Paul Shurte and invited his wife to attend.
Mr. Wheelahan corroborated that his daily routine included caring for the two boys and putting them to bed. He cooked, went to the grocery and dry cleaners. Mr. Wheelahan denied that he and wife agreed to abstain from sex. He stated that the beginning part of the sensate focusing process did involve physical contact without sex, but the goal was to engage in intercourse; however, their therapy ended at the initial stage.
Mr. Wheelahan stated that he became involved with a former paralegal associate just before he left home in June, 1987, but she was not responsible for his leaving. He claimed the situation had deteriorated to the point that he could not tolerate it. He admitted being sexually involved with Dawn Adams at the time of the cruise, but denied paying her rent in 1986.
Dawn Adams testified that she was sexually involved with Mr. Wheelahan around May or June, 1987.

APPEAL ARGUMENTS
Mrs. Wheelahan specifies two errors:
1) Excluding the testimony of Paul Shurte, the marriage counselor/therapist;
2) Finding that her "fault" was refusing to have sexual relations with her husband.
After Mr. Wheelahan rested, Mrs. Wheelahan called Paul Shurte to testify. Mr. Wheelahan's counsel objected citing Arsenaux v. Arsenaux, 428 So.2d 427 (La. 1983) and argued that Mr. Shurte was marriage counselor for both spouses. Mrs. Wheelahan's counsel urged that the privilege had been waived and Mr. Wheelahan discussed that issue in his testimony. Mr. Wheelahan's counsel stated that only the facts subsequent to therapy were in testimony, not what transpired during the sessions. Mr. Wheelahan discussed sensate focusing only to rebut Mrs. Wheelahan's explanation. Mr. Shurte's testimony was offered by proffer.
The proffer states that Paul Shurte would testify:
1) He was a therapist/marital counselor to the parties;
2) He counseled the parties individually and jointly;
3) Part of the therapy involved sex therapy;
4) Part of the sex therapy was "sensate focusing";
5) The parties agreed to abstain from sex as part of sensate focusing;
6) Mrs. Wheelahan had developed a psychological inhibition to sex as a result of two painful sex relations;
7) Mrs. Wheelahan felt unable to have sex despite her desire to do so;
8) Mrs. Wheelahan wanted to resume sexual relations and cooperated with the therapy;
9) Mr. Wheelahan denied that he was involved in an extramarital affair;

*1050 10) Mr. Wheelahan terminated therapy after he moved out of the matrimonial domicile;
11) Mrs. Wheelahan continued the sessions thereafter.
Mrs. Wheelahan argues that Mr. Shurte's testimony would have helped establish that she was not at fault, that her refusal to engage in sex was justified, and that Mr. Wheelahan consented to and condoned her actions and reconciled with her. She contends that Mr. Wheelahan consented to Mr. Shurte's testimony or waived any privilege as to Mr. Shurte. Mrs. Wheelahan submits that her conduct was not an independent contributory cause of the breakup. She claims justification for her actions would have been reinforced by Mr. Shurte's testimony.

THE LAW
A trial court's determination of fault is a factual finding which cannot be disturbed on appeal absent manifest error. Broussard v. Broussard, 462 So.2d 1386 (La.App. 3d Cir.1985).
In the area of domestic relations, much discretion must be vested in the trial judge and particularly in evaluating the weight of evidence which is to be resolved primarily on the basis of the credibility of witnesses. The trial judge having observed the demeanor of the witnesses is in the better position to rule on their credibility.
(citation omitted). Pearce v. Pearce, 348 So.2d 75, 78 (La.1977). An appellate court should not substitute its judgment for that of the trial judge who listened to the witnesses and observed their demeanor, but rather should affirm the finding of the trial court if there is any evidence in the record to support its conclusion. Gilberti v. Gilberti, 338 So.2d 971 (La.App. 4th Cir.1976).
Persistent refusal to engage in sexual intercourse in the absence of consent or sickness or grave fault may constitute cruel treatment within the meaning of La.C.C. art. 138 and is a legal ground for separation. Von Bechman v. Von Bechman, 386 So.2d 910 (La.1980); Phillpott v. Phillpott, 285 So.2d 570 (La.App. 4th Cir. 1973), writ refused 288 So.2d 643 (La. 1974). The party which alleges the refusal of sexual intercourse has the burden to show that there was a persistent and unjustified refusal. The alleged cruel treatment must be severe, frequent, and of a nature to render living together unsupportable. Bateman v. Larson, 452 So.2d 184 (La. App. 4th Cir.1984); Denbo v. Denbo, 345 So.2d 1257 (La.App. 1 Cir.1977).
Forbearance of cruel treatment and humiliation with the hope of holding a family together does not constitute reconciliation or condonement of the other spouse's actions. Cabral v. Heitkamp, 252 So.2d 353 (La.App. 4th Cir.1971); Sadoff v. Sadoff 210 So.2d 614 (La.App. 2d Cir.1968); McWaters v. McWaters, 209 So.2d 163 (La. App. 1 Cir.1968).
In order to receive permanent alimony after divorce the claimant spouse must be free from fault under La.C.C. art. 160, the same fault contemplated as grounds for separation under La.C.C. arts. 138 and 139. Boudreaux v. Boudreaux, 407 So.2d 1363 (La.App. 3rd Cir.1981). A spouse need not be totally blameless in the marital discord. The fault must be an independent contributory or proximate cause of the separation. The spouse seeking permanent alimony has the burden of proving freedom from fault. Broussard v. Broussard, 462 So.2d 1386 (La.App. 3rd Cir.1985). To find mutual fault it is not necessary for spouses to be equally guilty of fault; each spouse must have committed acts which constitute grounds for separation. Watson v. Watson, 442 So.2d 1310 (La.App. 3rd Cir.1983), writ denied 445 So.2d 450 (La. 1984).
La.R.S. 37:2714, entitled Privileged Communications, provides that communications made to a social worker cannot be divulged in court. It specifies in pertinent part:
A. A board certified social worker shall not be examined without the consent of his client as to any communication made by the client to him, or his advice given thereon in the course of professional employment....

*1051 B. No board certified social worker may disclose any information he may have acquired from persons consulting him in his professional capacity that was necessary to enable him to render services to those persons except:
(1) with the written consent of the client, or in the case of death or disability, with the written consent of his personal representative, other person authorized to sue, or the beneficiary of any insurance policy on his life, health or physical condition; or
(2) when the person is a minor under the age of twenty-one...; or
(3) when a communication reveals the contemplation of a crime or harmful act; or
(4) when the person waives the privilege of bringing charges against the board certified social worker for breach of the privilege.
C. Nothing in this section shall be construed, however, to prohibit any board certified social worker from testifying in juvenile court hearings concerning matters of adoption, child abuse, child neglect, or other matters pertaining to the welfare of children.

ANALYSIS
Mrs. Wheelahan argues that her husband consented to a waiver of the privilege based on La.R.S. 13:3734. The exceptions listed in R.S. 13:3734 C are for the contest of a will or an instrument transferring property by a deceased, death cases, workmen's compensation suits, and personal injury actions. That statute does not include a social worker as a health care provider and is not applicable.
Arsenaux v. Arsenaux, 428 So.2d at 427, cited by Mrs. Wheelahan, deals with whether a wife can claim the physician-patient privilege under La.R.S. 13:3734 and her right to privacy in order to exclude testimony about an alleged abortion in a suit for separation or divorce. Arsenaux referred to R.S. 13:3734 and noted that suits for separation and divorce are not included in the enumerated exceptions. The court concluded that adding a judicial exception would contravene the statute and the legislature's intent.
The Arsenaux court noted Mrs. Arsenaux's physical condition was not an essential issue and said that no implied waiver of the privilege should be inferred. The court found no compelling state interest to require an invasion of her right to privacy.
We hold that La.R.S. 37:2714 which relates to privileged communications to certified social workers is the relevant statute here. That statute clearly lists four exceptions when a social worker may disclose information acquired in a professional capacity. Like R.S. 13:3734, R.S. 37:2714 does not list a suit for separation as an exception. These facts are far less compelling to imply a waiver of privilege than in Arsenaux.
Mr. Wheelahan had consulted with Mr. Shurte before Mrs. Wheelahan joined the therapy sessions. Although there was general testimony about the sessions, no privileged communication was divulged by Mr. Wheelahan; he mentioned sensate focusing and other matters to clarify and rebut Mrs. Wheelahan's testimony. Mr. Wheelahan expressly invoked his privilege as to any communication made during the therapy sessions.
The trial court declared in its reasons for judgment:
The Court finds that the parties were mutually at fault in the break up of the marriage; the husband having admitted that he committed adultery during the marriage and the wife being guilty of cruelty towards the husband for her unjustified refusal to engage in sexual relations with him for two years.

* * * * * *
Defendant, Marguerite Vicknair Wheelahan argues that her refusal to engage in sexual intercourse with her husband, Harold Wheelahan was justified because he drank excessively. Furthermore, she asserts that on two occasions after which he had been drinking, they had sexual intercourse which was not proceeded by foreplay, thus causing her great physical pain due to her lack of lubrication. Defendant *1052 contends that after each incident she discussed this problem with plaintiff, but he refused to remedy it.
The Court finds defendant's argument unpersuasive. The initial time that evidence was produced as to the alleged incidents of painful intercourse was during the trial on the merits on the petition for separation. During the course of Marguerite Wheelahan's deposition, she was asked what caused the breakup of her marriage. She responded that she did not know. Furthermore, there was no evidence produced that Harold Wheelahan drank too much. The Court finds it hard to believe that a mother such as Marguerite Wheelahan would allow a father who drank to excess to take care of the children to the extent that she did.
The defendant made an assertion that the failure to engage in intercourse was consensual in as much as the parties were engaged in marriage counseling which involved a therapy called sensate focusing. The defendant testified that one condition of sensate focusing is an agreement between the parties not to engage in intercourse. The plaintiff testified that this was not a condition of sensate focusing. The Court finds that whether or not the parties agreed in counseling not to engage in intercourse is irrelevant inasmuch as the wife had refused to engage in intercourse for one and one-half years prior to counseling.
The trial court correctly found that there is no proof that Mr. Wheelahan drank excessively, the alleged basis for Mrs. Wheelahan's refusal to have sex. The court totally discounted Mrs. Wheelahan's claim about the painful sex. The court noted that the first mention of such incidents was at trial, not during Mrs. Wheelahan's deposition or in pre-trial pleadings.
The trial court disregarded the argument relative to voluntary abstention from sex during the six months of counseling prior to the physical separation. The judge emphasized the fact that Mrs. Wheelahan refused to have sex for one and a half years prior to therapy with Mr. Shurte. That period of time is clearly unreasonable and under these facts totally unjustified.
Interestingly, the proffer states that Mr. Shurte would have testified as to the painful sex, however, Mrs. Wheelahan said she did not tell the therapist about the two incidents. She said that she told no one because of embarrassment. Since Mrs. Wheelahan had not been in therapy with Mr. Shurte during the one and a half year period during 1985 to 1986, he could not have testified as to her reasons for not having sex during that period. Mrs. Wheelahan did not testify about her earlier therapy and her therapist was not asked to testify.
It is clear that the trial court's judgment was not based on the six month period during which the Wheelahans were in therapy with Mr. Shurte. Upholding the privilege as to Mr. Shurte's testimony was proper due to its confidential and privileged nature.
Mrs. Wheelahan argues that Mr. Shurte's testimony might have shed light on the possible illness and emotional and mental condition of both parties (a factor in evaluating the refusal to have sex) that issue was not raised in the trial court by pleadings or testimony. It cannot be considered by this Court. See Puccio v. Finch, 438 So.2d 597 (La.App. 4th Cir. 1983).
Mr. Wheelahan requests attorney's fees and the return of all alimony paid from the time of the judgment and relies on Roland v. Roland, 519 So.2d 1177 (La.App. 1st Cir.1977). In Roland the court found no basis for the wife's appeal other than to delay termination of the marriage and to continue alimony pendente lite and mortgage payments. Those circumstances are not present here.
The judgment is affirmed.
AFFIRMED.