686 So.2d 946 (1996)
Richard Wayne WAGNER
v.
Sylvia Celine Penn WAGNER.
No. 96-CA-1420.
Court of Appeal of Louisiana, Fourth Circuit.
December 18, 1996.
Rehearing Denied January 16, 1997.
*947 Leslie A. Bonin, New Orleans, for Appellant.
Lyman L. Jones, Jr., New Orleans, for Appellees.
Before CIACCIO and LANDRIEU, JJ., and GULOTTA, J. Pro Tem.
JAMES C. GULOTTA, Judge Pro Tem.
In this divorce action the husband claims the trial judge erroneously found his wife free from fault and erroneously allowed permanent alimony to the wife in the amount of $1,500 per month, the same amount as awarded for alimony pendente lite. We affirm the trial court's judgment on the fault issue but amend and reduce the amount of the permanent alimony award.
This litigation began on November 13, 1991 with the filing of a Petition for Divorce by the husband under LSA-C.C. art. 102.[1] In a Consent Judgment dated December 20, 1991, the husband was ordered to pay alimony pendente lite to the divorced wife in the amount of $1,500 per month. Following an October 28, 1992 Divorce Judgment, in a two day trial, concluding on December 8, 1992, the trial judge on September 20, 1993 concluded:
... while Mrs Wagner may not be blameless, her conduct was not of a nature to be the proximate cause of the break-up of the marriage and is therefore entitled to alimony.
The trial judge then awarded permanent alimony at the same level as alimony pendente lite after concluding that "no credible evidence" was submitted to reduce the prior $1,500 alimony pendente lite award. The divorced husband appeals the trial court's judgment on fault and permanent alimony.

Fault
Our courts have held that only "misconduct of a serious nature, providing an independent contributory or proximate cause of the break-up, equates to legal fault." Pearce v. Pearce, 348 So.2d 75 (La.1977); Thibodeaux v. Thibodeaux, 95-671 p. 5 (La. App. 5 Cir. 1/30/96), 668 So.2d 1269, 1272; Billingsley v. Billingsley, 618 So.2d 562, 564 (La.App. 2nd Cir.1993).
Although a spouse claiming permanent alimony must show he or she was not at fault in the breakup of the marriage, that spouse "need not be totally blameless in the marital discord." Doane v. Benenate, 95-0953 p. 2 (La.App. 4 Cir 2/15/96), 671 So.2d 523, 524; Thibodeaux v. Thibodeaux, 668 So.2d at 1272.
To be legally at fault, a spouse must be guilty of misconduct which compels a separation because the marriage is insupportable. Brewer v. Brewer, 573 So.2d 467, 469 (La.1991). "Nagging" does not equate to legal fault. Id. at 469. A party is not deprived of alimony due to a reasonable, justifiable response to the other spouse's initial acts. Taylor v. Taylor, 579 So.2d 1142, 1144 (La.App. 2nd Cir.1991); Green v. Green, 567 So.2d 139, 144 (La.App. 2nd Cir.1990). Petty quarrels between husband and wife do not rise to the level of legal fault. Allen v. Allen, 94-1090 (La.12/12/94), 648 So.2d 359, 362, citing Gormley v. Gormley, 161 La. 121, 108 So. 307 (1926).
Finally, it is well settled that a trial court's findings of fact relative to the issue of fault in domestic cases are entitled to great weight and will not be overturned on appeal absent manifest error. Manzanares v. Manzanares, 94-356 p. 1 (La.App. 5 Cir. 5/30/95), 656 So.2d 726, 727, writ denied 95-1637 (La.10/13/95) 661 So.2d 496; Mathews v. *948 Mathews, 614 So.2d 1287, 1290 (La.App. 2nd Cir.1993).
Although the trial judge did not specifically state that there was no legal fault on the part of the divorced wife, the judge nonetheless found that Mrs. Wagner was "entitled to permanent alimony because her conduct was not the proximate cause of the break-up of the marriage." This trial court finding which equates to no legal fault is supported by the record.
While the husband testified that his wife was cold and unaffectionate to him; denied him sex over an extended period of time; needlessly criticized him; was a poor housekeeper[2]; and on one occasion intentionally introduced spicy condiments into his food knowing full well that he was suffering from an ulcer, these complaints, in the full context of the record, amounted to annoyances and nagging but does not equate to legal fault. The record supports a conclusion that the wife's conduct was in response to the husband's drinking problems and ill temper, as testified to by the wife.
The husband's complaint that the wife did not contribute to the family finances is not supported by the record. Prior to the birth of Mrs. Wagner's four children she worked as a commercial artist. She also worked as a part-time real estate agent for 15 years and as a jewelry designer/maker. While she did not contribute a considerable amount of money to the family income, she nonetheless made an effort to contribute financially.
While the husband acknowledges that he had a drinking problem, he nonetheless asserts that his wife acknowledged that she was, to some extent, at blame for the marital discord.
Mr. Wagner acknowledged that he raised his voice to the children about 3 times per week and also to his wife, but not as often. He also testified Mrs. Wagner complained about his excessive drinking and he has on occasion drank to such an extent that he did not remember what happened the next morning. Mrs. Wagner testified her husband's temper was explosive and during the last three years of the marriage he screamed almost every day. Mrs. Wagner further stated the children were frightened of his screaming.
Dr. Emile Malek, the Wagners' next door neighbor, testified he could hear Mr. Wagner disciplining his children and arguing with his wife in a loud voice. Hugh Penn, Mrs. Wagner's brother, testified "Practically every time I went over there, there was some kind of screaming incident. Wayne was screaming at somebody about something."
Mrs. Maurice Dufour, the wife's mother, testified that she visited her daughter's home frequently. She noticed on those occasions that her son-in-law overindulged in beer and wine. She stated further that she witnessed him in many exhibits of anger. According to this witness "... when he's mad, it is frightening to me. He loses control."
Mr. Wagner's brother testified that he had seen his brother overindulge in alcohol but not to the point of getting drunk. However, in response to a question of whether his brother "... should look into his drinking problem", he answered affirmatively. He stated also he does not consider that his brother has a bad temper.
Considering the testimony, we cannot say the trial judge erred in his conclusion that Mrs. Wagner's conduct was not the "proximate cause of the break-up of the marriage and is therefore entitled to alimony."

Permanent Alimony
Turning now to the alimony issue, the husband asserts the trial judge erred in ruling permanent alimony should continue at the same amount as alimony pendente lite, that is $1,500 per month. We agree. The basis for awarding alimony pendente lite is different from that for permanent alimony. Permanent alimony is not determined by the guidelines for alimony pendente lite. See: Ward v. Ward, 339 So.2d 839, 842 (La.1976); Guillory v. Guillory, 626 So.2d 826, 831 (La. App. 2nd Cir.1993).
Alimony after divorce is intended to provide for the maintenance of the spouse which *949 includes the basic necessities of life, such as food, clothing and shelter. Shenk v. Shenk, 563 So.2d 1000, 1004 (La.App. 4th Cir.1990).
The spouse claiming permanent alimony has the burden of proving necessitous circumstances or that he or she has insufficient means for support. Guillory v. Guillory, 626 So.2d at 832; Musselman v. Musselman, 524 So.2d 90, 92 (La.App. 4th Cir.1988).
A review of the record, on the alimony issue, poses deficiencies regarding the husband's income as well as that of the wife. While subpoenas duces tecum were sought from the husband of his income records, bank records, income tax returns and business records indicating the "draws of compensation" he received as well as any commission earnings, the record is devoid of documentary evidence. Although Mr. Wagner's testimony regarding these records was elicited and production sought, the trial judge only allowed access to the wife for inspection of those records. No place in the testimony or in the exhibits do we find evidence of Mr. Wagner's income with the exception of a reference by Mr. Wagner's attorney that his "... present income as of October 19, 1992[is] in the amount of $43,850."[3] During the course of the husband's testimony he made a boastful reference to having made over $200,000 in one year with a vague reference to sometime ago and in that context was "... never praised ..." by his wife.
Likewise, we do not have the benefit of substantive evidence of the wife's earnings although she testified she had worked as a real estate agent, a commercial artist, and a designer/maker of jewelry. She stated that while selling real estate that she earned, in her best years, approximately $3,000 or $4,000 per year. At a later part of her testimony she indicated that she may have earned $4,000, $5,000 or $6,000 per year. No indication is made as to any earnings for any certain year and particularly the year or years immediately prior to the October 1992 hearing.
Nor is there any evidence in the record relating to the husband's expenses. There is an expense list of the wife showing her monthly expenses at $767.[4]
Considering the testimony, the exhibit and the entire record we conclude that the trial judge abused his discretion in awarding to the wife $1,500 per month in permanent alimony. When considering an annual income of $43,850; the payment by the husband of $1,500 per month for the support of four children together with the itemized expense list of the wife in the amount of $767 per month, we are compelled to reduce the monthly permanent alimony award from $1,500 to $750.
Having so concluded, we affirm the judgment on the fault issue entitling the wife to permanent alimony; however, we amend the trial court judgment to a monthly award of permanent alimony to the wife in the amount of $750. Cost of the appeal to be paid by Richard Wayne Wagner.
AMENDED, AND AS AMENDED AFFIRMED.
NOTES
[1] LSA C.C. art. 102 provides:

A divorce shall be granted upon motion of a spouse when either spouse has filed a petition for divorce and upon proof that one hundred eighty days have elapsed from the service of the petition, or from the execution of written waiver of the service, and that the spouses have lived separate and apart continuously for at least one hundred eighty days prior to the filing of the rule to show cause....
[2] The record indicates that the Wagners' had a housekeeper three days per week for 13 years. The housekeeper testified that Mr. Wagner never complained to her about the housework. Mrs. Wagner's mother testified that the house was clean, but messy because of the four children.
[3] In a consent judgment rendered on October 27, 1992 and signed on April 20, 1993, the trial judge in his child support order made reference to the husband's income as of October 12, 1992 in the amount of $43,850.
[4] This matter was submitted to this Court after oral argument on December 3, 1996. In an exhibit filed with this Court on December 13, 1996, following a request to the trial court (by this Court) we received an exhibit of a statement of assets and liabilities; however, we received no additional exhibits or testimony relating to income or expenses.