| t PLOTKIN, Judge.
When one marries the same person twice, it is unlikely that the parties will love each other more than they love themselves. This case proves that history repeats itself.
Defendant Esperanza Ferretjans Scior-tino appeals the trial court’s denial of her claim for permanent alimony, alleging that the trial court improperly found that she was at fault in the dissolution of the marriage. Mrs. Sciortino also claims that the denial of her alimony claim will cause her prejudice and force an undue hardship upon her. For the reasons discussed below, we affirm the trial court’s judgment Facts
Mr. and Mrs. Sciortino were married from December 14, 1968, to May 22, 1992, when they were divorced. They were then remarried on August 22, 1994; the second marriage was dissolved on April 9, 1999. During the last years of the marriage, Mrs. Sciortino became a homemaker, and her health deteriorated soon thereafter. At some point, Mr. and Mrs. Sciortino incorporated a community business in which they placed all of their movable assets and cash accounts. While |?Mrs. Sciortino was listed as the sole owner of the business, Mr. Sciortino served as manager of the business. Mrs. Sciortino initially assisted with the business, but started staying at home after six years.[1] Mr. Sciortino continued to ask Mrs. Sciortino to sign promissory notes and loan papers after she was no longer involved with the business.
On June 2, 1998, a physical altercation occurred between the couple. Nevertheless, both parties continued to reside in the marital residence until ten days after the fight, when Mr. Sciortino left without notice. Mrs. Sciortino discovered that he had previously transferred all of the assets and customer lists of the community business to a separate business that he now owns.[2]
Mr. Sciortino filed for divorce on June 22, 1998, in response to which Mrs. Sciorti-no demanded alimony, asserting that she was free from fault in the break up of the marriage. By consent judgment, Mr. Sciortino agreed to pay Mrs. Sciortino $2000 per month in interim alimony. However, the trial court judge denied Mrs. Sciortino’s request for permanent alimony, finding that the parties were “mutually at fault and ... guilty of habitual intemperance and cruel treatment towards each other.” Specifically, the trial court found that Mrs. Sciortino continually accused her husband of having affairs and routinely expressed dislike for his first wife. The court also found that she interfered with the family business by diverting business calls and jeopardizing the company’s financial endeavors. Finally, the trial court concluded that “[b]oth parties’ ill treatment of one another rendered the marriage insupportable.” Mrs. Sciortino appeals, raising the following issues:
|81. Whether Mrs. Sciortino was entitled to alimony because she proved that she was free from legal fault in the breakup of the marriage.
*243 2. Whether Mrs. Sciortino, who is not a native of the United States, was entitled to a translator at trial upon request.
Definition of legal Fault
A Louisiana court may award permanent alimony to a party who is “free from fault prior to the filing of a proceeding to terminate the marriage, based on the needs of that party and the ability of the other party to pay.” La. C.C. art. Ill (West 1999). The claimant must prove freedom from fault; it is not enough just to prove that the other party was at fault. Wheelahan v. Wheelahan, 557 So.2d 1046, 1050 (La.App. 4 Cir.), writ denied, 559 So.2d 1379 (La.1990). Acts constituting legal fault are synonymous with the fault grounds that previously entitled a spouse to a separation or divorce, under La. C.C. art. 138 (repealed in 1990). Adams v. Adams, 389 So.2d 381, 382 (La.1980). Since the repeal of La. C.C. art. 138, the courts have looked to jurisprudence to determine what constitutes fault. Doane v. Benenate, 95-0953, p. 2 (La.App. 4 Cir. 2/15//96), 671 So.2d 523, 524.
This court has previously held that the only conduct that constitutes fault is that of a serious nature, conduct that qualifies as an independent contributory or proximate cause of the break-up of the marriage. Wagner v. Wagner, 96-1420, p. 2 (La.App. 4 Cir. 12/18/96), 686 So.2d 946, 947, writs denied, 97-0380, 97-0419 (La.3/27/97), 692 So.2d 394, 399. The spouse claiming support does not have to be totally blameless in the marital discord. Id. The misconduct must be such that it renders the marriage insupportable; nagging alone does not constitute legal fault. Id. In reaching a decision on fault, the trial court must first determine whether the objective factual conduct that was allegedly cruel actually occurred, and then 1¿whether such conduct rendered the parties’ living together insupportable. Baxter.
Mrs. Sciortino’s allegations
Mrs. Sciortino argues that her conduct toward her husband was insufficient to rise to a legal level of fault, both when her actions are considered individually and when they are considered collectively. Mrs. Sciortino challenges both the trial court’s factual findings, and its legal conclusions.
Concerning the trial court’s factual finding that she “continually accused” her husband of having an affair, Mrs. Sciortino claims that she only questioned her husband about having an affair twice. Further, she cites Baxter v. Baxter, 607 So.2d 823, 825 (La.App. 1 Cir.1992) for the proposition that such sexual accusations alone do not constitute cruel treatment. She also argues that her accusations were not the proximate cause of the divorce, and that they were not the type of conduct that would render living together insupportable. Moreover, she notes that in Adams, 389 So.2d at 382, the Louisiana Supreme Court held that the wife’s constant accusations of an affair between her husband and another woman did not constitute fault.
Mrs. Sciortino also challenges the trial court’s factual finding concerning her role in the family business, claiming that she did not jeopardize their financial endeavors. She also claims that she never diverted business calls. More specifically, Mrs. Sciortino claims that she never took money from the corporation for herself, but only transferred money between corporate accounts for the purpose of paying off community debts. She admitted that she did close one loan account |swhen a bank employee informed her as the sole proprietor she would be held solely liable for the debts of the community business
The trial court relied on two cases, which Mrs. Sciortino contends are distinguishable on the facts. First, the trial court cited Wheelahan, 557 So.2d 1046 (La.App. 4 Cir.1990), in which the wife denied her husband sex for two years prior to the separation and refused to communicate *244 with her husband. Mrs. Sciortino contends that this behavior comports with Mr. Sciortino’s actions rather than her own, that he refused to communicate with her, and that she never denied him sex. Second, the trial court cited Minella v. Minella, 97-1264 (La.App. 5 Cir. 5/27/98), 713 So.2d 816, in which the court found that the marriage was fractured and characterized by a pattern of mutual harassment and nagging concerning the raising of the husband’s teenage daughter sufficient to support a finding of mutual fault making the marriage insupportable. However, Mrs. Sciortino notes that the couple in Minella were married only two years and argues that her nearly thirty-year marriage to Mr. Sciortino should not be compared a two-year marriage.
Further, Mrs. Sciortino claims that her actions should be classified as simple nagging, which is inevitable in any marriage, especially one lasting nearly thirty years. She claims that the only physical fight between the parties was the fight reported to police on June 2, 1998, which she claims stated when her husband reacted violently when she asked if he was having an affair. Mrs. Sciortino suggests that one incident, in which both parties were to blame, is not enough to support a finding of fault on her part.
As an example of the kind of conduct necessary to constitute fault, Mrs. Sciorti-no cites Crifasi v. Crifasi, 94-0962 (La.App. 4 Cir. 1/19/95), 650 So.2d 347. In that case, the wife spent the night with another man after separation but | fibefore the divorce, repeatedly abandoned her husband during the marriage, and engaged in heavy drug use. Moreover, she notes that in Saacks v. Saacks, 612 So.2d 925 (La.App. 4 Cir.1993), the wife instigated many arguments, became abusive after drinking, and physically injured her husband on several occasions. Mrs. Sciortino submits that there is no evidence that she ever engaged in behavior of the magnitude necessary to support a finding of legal fault. Neither simple quarreling nor one physical confrontation constitutes legal fault, she asserts.
Mrs. Sciortino also questions the quality of the corroborative evidence and attacks the credibility of Mr. Sciortino’s only two witnesses, his sons from a previous marriage. She notes that neither son visited the Sciortinos at home very often, and that neither could recall specific disputes between the parties. Furthermore, one of the sons is now co-owner of Mr. Sciortino’s new business, which suggests bias, she says.
Mrs. Sciortino next argues that her conduct was justified by the initial acts of Mr. Sciortino, citing Wagner, 686 So.2d 946, for the proposition that a party should not be deprived of support due to his or her reasonable response to the other spouse’s initial acts. Mrs. Sciortino alleges that her husband drained assets from the family business and incurred debts without her authorization. Moreover, she claims that he was not intimate with her during the last eighteen years of their marriage, and that he called her names, such as “Spanish maid.” Mrs. Sciortino’s daughters both testified that Mr. Sciortino was indifferent to their mother, that he never showed her any love, that he constantly questioned the marriage, and that he constantly threatened to leave. Mrs. Sciortino contends that Mr. Sciortino’s increasing indifference to her, coupled with his incurring tremendous debts, were the actual causes of the break-up of the marriage.
|7Mr. Sciortino’s allegations
Mr. Sciortino argues first that when findings of fact are based upon a decision regarding the credibility of witnesses, respect should be given to those conclusions, since only the factfinder can be aware of variations in demeanor and tone of voice, which bears heavily on understanding and believing what is said. Robling v. Allstate Ins. Co., 97-0582, p. 11 (La.App. 1 Cir. 4/8/98), 711 So.2d 780, 786. Thus the real issue, Mr. Sciortino asserts, is whether the trial judge’s conclusion was reasonable, if the court finds no manifest error in the *245 trial judge’s decision then it should be upheld. Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993).
The spouse claiming support bears the burden of proving freedom of fault in the break-up of the marriage. Mr. Sciorti-no cites the following actions by his wife in support of his contention that she was not free from fault:(l) physically hitting him; (2) cursing and belittling him; (3) making unfounded accusations that he was having an affair; (4) baseless suspicions; (5) making unsupported accusations to others the he was untrustworthy and was having an affair; (6) dredging up alleged faults that occurred prior to their reconciliation; (7) mental harassment and nagging on a continual basis such as to constitute cruel treatment; and (8) unprovoked confrontations in his place of business. Mr. Sciorti-no cites the testimony of his two sons and himself as confirmation of this behavior.
Most of the acts listed above were acknowledged by Mrs. Sciortino on cross examination. She admitted that she believed Mr. Sciortino was the devil; that she accused him of having an affair without having evidence of any such relationship; that she repeatedly claiming wrongdoings in the business without supporting 1 sevidence; and that she did not trust his management of the business, although she had never attempted to confirm her distrust.
Alternatively, Mr. Sciortino claims that Mrs. Sciortino is not entitled to support even if the court finds her free from fault in the break-up of the marriage. Mr. Sciortino claims that, after paying off community debts each month, he has a deficit of approximately $2,400 each month. He has been able to juggle these debts on a temporary basis, he claims, but is seventy-six years old and cannot bear this burden along with the payment of any support to Mrs. Sciortino, who is twelve years younger. Mr. Sciortino points out that Mrs. Sciortino did not offer any evidence to support her claim that she is unable to work. Mr. Sciortino claims that she does not have financial responsibility for anyone other than herself, and that she was been able to devote five days a week to working for charities. Mr. Sciortino says that he has worked five to six days a week in order to pay off conjmunity debts, while Mrs. Sciortino has done nothing. Mr. Sciortino asserts that he should not be ordered to bear any additional burdens on her behalf.
Mr. Sciortino also lists several unsubstantiated allegations that appear in Mrs. Sciortino’s brief. He claims that the record does not reflect any of the following allegations: (1) that Mr. Sciortino requested that his wife discontinue working with him in the family business; (2) that a lawsuit was filed against Mr. Sciortino for mismanagement of community property; (3) that Mrs. Sciortino was advised by a bank employee to close her account; (4) that Mr. Sciortino was caught draining the assets from the family business; or (5) that Mr. Sciortino dissolved the business. Concerning the last claim, Mr. Sciortino asserts that it was Mrs. Sciortino who interfered with the orderly management of the business. Mr. Sciortino also takes issue with Mrs. Sciortino’s repeated reference to an “almost 3(L^ear9 marriage,” and asserts that the marriage in question lasted only four years. He submits that the marriage did not end because he started his own business; he claims that he had no option but to start his own business when Mrs. Sciortino cleaned out the business checking accounts, took possession of all the business records, and transferred all business telephones into her own name.
Disposition of the Case
Resolution of this issue involves a question of degree and deference to the factual findings of the trial court. The first question is whether the trial court properly found that Mrs. Sciortino’s actions were severe enough and constant enough to render the marriage insupportable. In order to prove that she was entitled to permanent alimony, Mrs. Sciortino *246 was required to affirmatively prove that she was not at fault in the break-up of the marriage; it is not enough for her to prove that Mr. Sciortino was also at fault. We find no manifest error in the trial court’s finding that Mrs. Sciortino faded to carry that burden of proof.
In fact, the record evidence supports the trial court’s finding that the arguments between the couple went beyond nagging and ordinary quarreling, and rose to the level of “habitual intemperance and cruel treatment towards each other. The record supports the trial court’s finding that many of the arguments erupted as a result of Mrs. Sciortino’s jealousy of Mr. Sciortino’s first wife, and over her suspicions that he was having an affair. Louisiana jurisprudence allows a spouse who perceives infidelity to be quarrelsome and holds that such a reasonable reaction is not legal fault. Allen, 648 So.2d at 362. However, the record evidence in this case, including Mrs. Sciortino’s own testimony, supports the trial court’s finding that Mrs. Sciortino’s actions went beyond a reasonable reaction to |insuspicions that her husband was having an affair, especially in light of the trial court’s finding that her suspicions were unfounded, and that her nagging constituted a pattern of harassment.
Moreover, Mr. Sciortino’s sons both testified that Mrs. Sciortino was not only jealous of their late mother, and was also jealous of any attention Mr. Sciortino paid to them. They further testified that the physical altercation that occurred on June 2,1998, erupted when Ronald Sciorti-no, Mr. Sciortino’s son, fired Mrs. Sciorti-no’s son and did not pay him immediately. This version of the facts varies from Mrs. Sciortino’s version; she claims the fight started when she asked Mr. Sciortino if he was having an affair. In fact, the record is replete with contradictory testimony concerning the events leading to the dissolution of the parties’ marriage. When there are two possible views of the evidence, the trial court’s decisions on credibility cannot be considered manifestly erroneous. .
Given the contradictions in the testimony, the trial court’s finding that Mrs. Sciortino was at fault in causing the break of the marriage is not manifestly erroneous. That finding is supported both by the evidence presented by Mr. Sciortino and by Mrs. Sciortino’s own testimony. Accordingly, we affirm the trial court judgment denying Mrs. Sciortino’s claim for permanent alimony.
Translator
Mrs. Sciortino claims that the trial court erred in denying her request for a translator. English is not her first language, and she claims that she was afraid of becoming confused and that she did become confused by several of the questions at the trial. Being placed in an unknown, controversial situation caused Mrs. Sciortino confusion and an inability to express herself properly, she said.
I,,Mr. Sciortino contends that the trial court did not abuse its discretion in denying Mrs. Sciortino the use of a translator. In Kim v. Kim, 563 So.2d 529 (La.App. 5 Cir.1990), the court held that a litigant who is unable to fully understand or read and write the English language is entitled to an interpreter. Mrs. Sciortino had previously testified in a trial without the use of a translator, without any problems. She worked with Mr. Sciortino in the family business, and also ran the computer department at Ocean Drilling and Exploration Company. Ms. Sciortino also owned and operated a pet store, worked as a DJ, and held a political office in the Edwards’ administration. The trial court did not abuse its discretion in finding Mrs. Sciortino sufficiently fluent in English as to not require a translator. Also, the translator that Mrs. Sciortino wanted to use had already been designated by her to testify at trial and was under a sequestration order that prevented her from being in the courtroom during Ms. Sciortino’s testimony. Based on Mrs. Sciortino’s employment record and other record evi- *247 denee, we find no error in the trial court’s decision to deny her a translator.
Accordingly, the trial court judgment is affirmed.
AFFIRMED.
MURRAY, J., CONCURS IN THE RESULT.

. A dispute exists over whether Mr. Sciortino requested that Mrs. Sciortino leave the business.

. Neither the date Mrs. Sciortino discovered that Mr. Sciortino had transferred all the assets nor the date he actually transferred the assets is clear from the record.