CIACCIO, Judge.
Adolph Suhren filed suit for a separation from bed and board against his wife Carole Suhren on the grounds of cruel treatment. Carole Suhren reconvened seeking a separation from bed and board on the basis that Adolph Suhren had abandoned her and subjected her to cruel treatment. The trial *130 court granted the parties a legal separation on the basis of their mutual fault. Carole Suhren applied for a New Trial which was denied and she thereafter filed this appeal alleging two assignments of error. We affirm the judgment of the trial court.
The two issues presented for our review are: (1) Did the trial court err in finding Mrs. Suhren to be at fault? and (2) Did the trial court err in denying Mrs. Suhren’s motion for a new trial.
Carole Curet Suhren and Adolph Charles Suhren, Jr., were married, in New Orleans, on March 2, 1968. This was the second marriage for both parties. Mrs. Suhren had two mature daughters from her first marriage and Mr. Suhren had one mature daughter from his first marriage. The parties had a minor son born of this marriage and he was school age at the time of trial.
On May 14, 1985 Mr. Suhren moved from the matrimonial domicile located at 2125 State Street in New Orleans. He thereafter filed this suit for legal separation. FAULT OF CAROLE C. SUHREN:
The trial court found the parties each to be at fault in causing their separation. The court reasoned as follows:
Mr. Suhren proved to my satisfaction that, during the last years of their marriage, Mrs. Suhren struck him on a number of occasions, once threatened him with a revolver, referred to him as a “bastard” and a “cheap bastard”, accused him of adultery, without proof, accused him of having an “incestuous-type” relationship with his daughter, of having an “abnormal” relationship with his father and sister, of having an “odd” relationship with his mother, and of denying him sexual relations.
Mrs. Suhren proved to my satisfaction that Mr. Suhren was a constant drinker, who, when drinking, became argumentative and accusatory; that Mr. Suhren struck her on one occasion; and that, towards the end of their relationship, he cut off her charge accounts, and gave her only $30.00 per week in spending money.
It is apparent to me that this is a clear case of mutual fault in the separation, and I will sign a judgment to that effect.
Mrs. Suhren contends that since her husband abandoned the matrimonial domicile it was incumbent upon him to prove that his departure was legally justified. She contends that her husband failed to prove she was guilty of such fault as would have rendered their living together insupportable. She reasons that her actions were justified under the circumstances or not of such gravamen as to constitute “cruel treatment”. As such, Mrs. Suhren argues that the trial court erred in finding her guilty of legal fault.
In Louisiana a separation from bed and board may be granted reciprocally, for several reasons, including: “abandonment of the husband by the wife or the wife by the husband” or for “habitual intemperance of one of the married persons, or excesses, cruel treatment, or outrages of one of them toward the other, if such habitual intemperances or such ill treatment is of such a nature as to render living together insupportable.” C.C. Art. 138(3), (5). Abandonment, without legal cause, constitutes fault. Burnett v. Burnett, 324 So.2d 622 (La.App., 2nd Cir., 1975). In order to preclude the recovery of alimony, the “fault” must be such as would constitute a grounds for separation. C.C. Arts. 138, 160. Rittiner v. Sinclair, 374 So.2d 680 (La.App. 4th Cir., 1979). The Louisiana Supreme Court has discussed the issue of what constitutes marital fault. Pearce v. Pearce, 348 So.2d 75 (La., 1977); Kendrick v. Kendrick, 236 La. 34, 106 So.2d 707 (1958). In the Pearce decision, supra, at p. 77-78 Justice Marcus, speaking for the Court, stated:
“We have held that, under this statute respsecting an award of alimony to a wife without “fault”, the word “fault” contemplates conduct or substantial acts of commission or omission by the wife violative of her marital duties and responsibilities. A wife is not deprived of alimony after divorce simply because she was not totally blameless in the marital discord. Vicknair v. Vicknair, 237 La. *131 1032, 112 So.2d 702 (1959); Davieson v. Trapp, 223 La. 776, 66 So.2d 804 (1953) Breffeilh v. Breffeilh, 221 La. 843, 60 So.2d 457 (1952); Adler v. Adler, 239 So.2d 494 (La.App. 4th Cir.1970). To constitute fault a wife’s misconduct must not only be of a serious nature but must also be an independent contributory or proximate cause of the separation. Kendrick v. Kendrick, 236 La. 34, 106 So.2d 707 (1958). The question of a wife’s fault under the statute providing for alimony when a wife has not been at fault and has not sufficient means for her support is a factual one. Morgan v. Morgan, 260 So.2d 336 (La.App. 4th Cir.1972). We have recognized that a trial court’s findings of fact on the issue of a wife’s “fault” will not be disturbed on appeal unless found to be manifestly erroneous. Williams v. Williams, 215 La. 839, 41 So.2d 736 (1949), Fletcher v. Fletcher, 212 La. 971, 34 So.2d 43 (1948). In the area of domestic relations, much discretion must be vested in the trial judge and particularly in evaluating the weight of evidence which is to be resolved primarily on the basis of the credibility. Trosclair v. Trosclair, 337 So.2d 1216 (La.App. 1st Cir.1976). The factual findings of the trial court are therefore to be accorded very substantial weight on review. Gilberti v. Gilberti, 338 So.2d 971 (La.App. 4th Cir.1976).”
The appellate court will not disturb the findings of fact of the trial court unless the findings are “clearly wrong.” Canter v. Koehring, 283 So.2d 716 (La., 1973); Arceneaux v. Dominque, 365 So.2d 1330 (La.1979).
The record reveals conflicting testimony given by the parties concerning the alleged acts of cruel treatment:
Mr. Suhren testified that he left the matrimonial domicile on May 14, 1985 due to the cruelty of his wife. He stated that his wife was jealous of his family and friends and particularly his grown daughter from a previous marriage. According to the plaintiff, his wife groundlessly accused him of having sexual relations with a female attorney, a policewoman, and a member of' his office staff. His wife referred to him as “cheap” in the presence of employees of his corporation. This incident was collaborated by the office bookkeeper. Mrs. Suhren was said to have also called the plaintiff a “cheap bastard” and a “liar”. According to Mr. Suhren, his wife had falsely accused him of having sex with his adult daughter and his sister. He said she also told him that he had an “abnormal” relationship with his mother.
Mr. Suhren testified that Mrs. Suhren had frequently attacked him physically. According to him, his wife had hit him with a high heel shoe and a whiskey bottle. She had also kicked him in the flat of his back causing him to fall down the staircase in his residence. Mr. Suhren also relayed an incident wherein his wife confronted him with a loaded gun and stated that she could kill him.
Mr. Suhren further testified that his wife taunted him with a lascivious dance and thereafter refused him sex. He stated that his wife denied him sexual relations on several occasions. He stated that he was not intoxicated at the time he made sexual advances towards his wife. He conceded that he had occasional problems with impo-teney before he moved from the couple’s bedroom. He stated, however, that this move resulted because he was unable to deal with loving his wife and yet being unable to touch her.
Mrs. Suhren denied being extremely jealous of all the people in her husband’s life. She admitted that she had accused her husband of an adulterous relationship with a female member of his staff. She also testified that she saw a female attorney enter her husband’s car and touch him a lot. She conceeded that she had never seen her husband engage in extra-marital relations.
Mrs. Suhren admitted calling her husband a “bastard” and “cheap bastard”.
Mrs. Suhren conceeded that she was jealous of her husband’s adult daughter. She stated that she felt her husband’s relationship with his daughter was “abnormal” and “incestuous-like” in that he treated her as he should have treated his wife. Carol Suhren accused her husband of having a *132 sick daughter. She also felt he had been raised by sick parents. Mrs. Suhren termed her husband’s relationship with his mother as “odd” in that at the age of 30 years he still held his mother’s hand when they visited a movie. She denied calling Mr. Suhren’s father “crooked,” as her husband testified.
Mrs. Suhren did not remember hitting her husband with a whiskey bottle. She admitted throwing a telephone directory at her husband and hitting him with a shoe however she alleged she was acting in self defense. She stated that on one occasion she pushed her husband out her bedroom after he broke down the door and her husband fell down the stairs.
Mrs. Suhren denied telling her husband that she could kill him, however she conceded on cross examination, that in January, 1983 following a fight with her husband, she walked through the den with a loaded service revolver. She denied drawing the gun on her husband and stated that she merely took the gun with her to her car.
With regard to the couple’s sexual relations, Mrs. Suhren testified that she only refused her husband sex when he was drunk because he was hurtful and abusive. She denied performing a provocative dance for her husband. She stated that he never approached her for sex following his hemorrhoid operation. She also stated that on their last encounter her husband could not function sexually.
The trial court’s findings of fact concerning acts of cruel treatment by Mrs. Suhren resulted from his evaluation of credibility. These findings are fully supported by the record and we find no error in this regard.
Contrary to Mrs. Suhren’s assertions that her actions were justified under the circumstance and that they were not of such a magnitude as to constitute legal fault, we find that the trial court correctly found these actions to be of a serious nature and a contributing cause of the separation so as to constitute legal fault. Under these circumstances, Mrs. Suhren’s abandonment of the matrimonial domicile was justified; and is not a ground for the legal separation of these parties.
Since Mr. Suhren has not appealed the judgment of the trial court finding him guilty of fault in the legal separation, the adjudication of his fault is final.
NEW TRIAL
Mrs. Suhren argues that the trial court erred in not granting her a new trial as the judgment was contrary to the law and evidence. La.C.C.P. Art. 1972(1). The trial court granted these parties a legal separation grounded upon mutual fault. As previously discussed, the trial judge correctly found that Mrs. Suhren’s actions constituted fault for purposes of a legal separation. These findings were clearly supported by the record. Thus, the trial court correctly denied the defendant’s motion for a new trial on this grounds.
Mrs. Suhren also alleges that the trial court erred in refusing to grant her a new trial because she had “discovered, since the trial, evidence important to the cause which [she] could not, with due diligence have obtained before or during the trial.” La.C.C.P. Art. 1972(2).
Mrs. Suhren contends that had she known that the court was going to consider a will which her husband attempted to introduce to support his contention that she had threatened his life, she would have sought to produce other wills of her husband which would refute this contention.
Our review of the record indicates that the will was not introduced and the trial judge ordered all testimonial reference to the contents of the last will stricken from the record. As such, Mrs. Suhren’s will could have played no part in the trial judge’s decision in this case. Accordingly, no prejudice was caused to the defendant by the attempted introduction of this document or reference to it.
Mrs. Suhren argues that the testimony of Joel Gibert, the plaintiff’s sister, would have affected the outcome of the trial. She however fails to demonstrate to this court the nature of the evidence, how it is important to this cause and her exercise of due *133 diligence in securing the evidence. As such this contention is groundless and without merit.
Finally, defendant argues that the testimony of the plaintiffs physician, Dr. Mayo Emery, was necessary in order to demonstrate that the plaintiffs condition prevented him from “enjoying the sexual congress he claims his wife denied him ...”
Defendant noticed the deposition of Dr. Emery for five days before trial. In an apparent attempt to evoke the physician-patient privilege, the plaintiff sought a protective order from the court precluding Dr. Emery’s testimony. La.R.S. 13:3734. The trial court granted the protective order precluding the testimony. We find no abuse of the trial judge’s discretion in this regard. See: Arsenaux v. Arsenaux, 428 So.2d 427 (La.1983).
Accordingly, the trial judge did not err in refusing to grant a new trial to the defendant on the basis of the alleged newly discovered evidence.
For the reasons assigned the judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.