WILLIAMS, Judge.
At issue is the beneficiary designation of two life insurance policies, each in the amount of $500,000.00, upon the life of A.C. Suhren, Jr. The possible beneficiaries are three trusts set up by A.C. Suhren, Jr. Parties herein are the principal and income beneficiaries of the three competing trusts and Union Life Insurance Company, which issued the life insurance policies in question to Mr. Suhren.
*188 FACTS
A.C. Suhren, Jr. had been married twice. He had two children: Sandra Suhren Hamblin, his daughter from his first marriage, and Adolph Charles Suhren, III (“Charles”), his son from his second marriage, to Carol C. Suhren. Suhren’s second wife, Carol C. Suhren also had two children from a previous marriage, Julie and Terie Trinchard.
In 1983, A.C. Suhren, Jr. set up a series of inter vivos life insurance trusts created pursuant to LSA-R.S. 9:1881. These are the A.C. Suhren, Jr. Trust No. 1, the A.C. Suhren, Jr. Trust No. 2, and the A.C. Suh-ren, Jr. Class Trust. The A.C. Suhren Trust No. 1 named Carol C. Suhren as income beneficiary with Julie and Terie Trinchard (Carol C. Suhren’s daughters from a prior marriage) and Joel Gibert (Mr. Suhren’s sister) as principal beneficiaries. The A.C. Suhren Trust No. 2 named Charles (Mr. Suhren’s then-minor son who was born of the marriage between Mr. Suhren and Carol Suhren) as the income beneficiary and Charles’ children, if any, as the principal beneficiaries. The A.C. Suh-ren, Jr. Class Trust named Sandra Suhren Hamblin (Mr. Suhren’s daughter from his first marriage) as income beneficiary and her children as principal beneficiaries. As originally created in 1983, the trusts were funded by a $1.5 million life insurance policy with National Benefit Life Insurance Company. Each trust was named as beneficiary of $500,000.00 of insurance under that policy.
Mr. Suhren left the marital domicile in 1985. That same year, Mr. Suhren stopped funding the $1.5 million life insurance policy and made application to the Union Life Insurance Company for two $500,000.00 face value policies of insurance to fund two of the three original trusts. Mr. Suhren’s insurance agent of eight to ten years, Mr. Leon Charles Adams, prepared the life insurance application form and secured Mr. Suhren’s signature thereon. Mr. Adams then submitted the application to Union Life Insurance Company. However, Mr. Suhren failed to designate the income and principal beneficiaries on the application.
Mr. Suhren filed a petition for separation from his wife Carol on May 17, 1985. A judgment of separation was issued on February 12, 1986 based on mutual fault and a finding that both parties were guilty of cruel treatment.[1]
At some point before Mr. Suhren’s death, the space on the policy application marked “For Home Office Use Only” was filled in by a Union Life employee, Jane Womac, to provide that the beneficiaries of the policies were the A.C. Suhren, Jr. Trusts 1 and 2. Inserted into the same space was information regarding the insured’s age and the dates of the two trusts. Mr. Suhren died on March 7, 1987.
On October 21, 1987, Sandra Suhren Hamblin filed a petition asking that the A.C. Suhren, Jr. Class Trust be declared a beneficiary of the insurance policies. More specifically, Ms. Hamblin asked that the insurance policies be reformed to reflect the insured’s true intent to name the A.C. Suhren, Jr. Class Trust and the A.C. Suh-ren, Jr. Trust No. 2 as co-beneficiaries of both policies.
Union Life asserted a reconventional demand for concursus, joining as parties-defendant Sandra Suhren Hamblin, Adolph Charles Suhren, III, Joel Gibert, Carol Suh-ren, Julie Ann and Terie Jean Trinchard (Mrs. Suhren’s daughters) and the First National Bank of Commerce as trustee.
The trial court held that the beneficiaries were the A.C. Suhren, Jr. Trust Nos. 1 and 2, as designated in the “For Home Office Use Only” space in the policies. However, the Court also found that Carol C. Suhren, was disqualified as a beneficiary of the A.C. Suhren, Jr. Trust No. 1. Under the terms of the trust, Mrs. Suhren was disqualified both because she was no longer living with the settlor (Mr. Suhren) and because proceedings for a separation had been filed. Therefore, the court determined that the beneficiaries of the A.C. *189 Suhren Trust No. 1 are Julie Ann Trinch-ará ¼⅛, Terie Jean Trinchará ¼⅛, aná Joel Suhren Gibert xk.
Sanára Suhren Hamblin appealeá, assigning as error 1) the trial court’s failure to reform the life insurance policies to comport with the insureá’s intent to benefit the A.C. Suhren, Jr. Class Trust in favor of his only áaughter aná her chiláren, aná 2) the trial court’s conclusion that the eviáence áiá not establish Suhren’s intent to name the A.C. Suhren, Jr. Class Trust as a co-beneficiary of the life insurance policies. We affirm.
1. Reformation of the Insurance Policies
The initial question is whether the beneficiary áesignation in the “For Home Office Use Only” space 1) constitutes the original áesignation by the insureá; 2) constitutes a change of the áesignateá beneficiaries; aná/or 3) is an invaliá áesignation. Unáer the terms of the policies, any change of beneficiary must be requesteá by the in-sureá in writing.
Thus, if the “Home Office Use” beneficiary áesignation constitutes the original áesignation, Ms. Hamblin must prove that Suhren changeá the beneficiary áesignation to name the A.C. Suhren, Jr. Class Trust by written request. If the “Home Office Use” áesignation constitutes a change of beneficiaries, that áesignation is valiá only if there is proof of a written request to name the A.C. Suhren, Jr. Trust Nos. 1 aná 2 as beneficiaries. If the “Home Office Use” áesignation is invaliá, either for lack of proof of change or for any other reason, Suhren’s intent must be áetermineá from the surrounáing facts.
Sanára Suhren Hamblin maintains that the “Home Office Use Only” beneficiary áesignation constitutes neither the original áesignation by Mr. Suhren (because there was no beneficiary áesignation when he signeá the application) nor a change of beneficiaries. Rather, the beneficiary áes-ignation in the application is simply invaliá because it fails to conform with the intent of the insureá. Therefore, the policy must be reformeá, aná the insureá’s intent must be áetermineá by the surrounáing facts. Ms. Hamblin argues that the following con-áuct on the part of the insurance agents aná Union Life resulteá in a beneficiary áesignation which áoes not conform with the intent of the insureá: First, Union Life accepteá the policy application without a beneficiary áesignation. Seconá, Union Life receiveá two áocuments ináicating that the intenáeá beneficiaries were the A.C. Suhren, Jr. Class Trust aná the A.C. Suhren, Jr. Trust No. 2. The áocuments she refers to are the Equifax creáit report aná an unáateá memoranáum from Leon Charles Aáams to Ben Teekel. Both of these áocuments were founá in the insurance file aná both ináicate that the intená-eá beneficiaries were the A.C. Suhren, Jr. Class Trust aná the A.C. Suhren, Jr. Trust No. 2. Therefore, Ms. Hamblin contenás that this knowleáge must be imputeá to Union Life.
Ms. Hamblin also maintains that the insertion of the beneficiaries by a low-level employee of Union Life, Jane Womac, is an unauthorizeá aná ineffective alteration of the application unáer LSA-R.S. 22:617:
§ 617 Alteration of application
A. Any application for insurance in writing by the applicant shall be altereá solely by the applicant or by his written consent, except that insertions may be maáe for aáministrative purposes only in such manner as to ináicate clearly that such insertions are not to be ascribeá to the applicant.
B. Any insurer issuing an insurance contract upon such an application unlawfully altereá by its officer, employee, or agent shall not have available in any action arising out of such contract, any áefense which is baseá upon the fact of such alteration, or as to any item in the application which was so altereá.
In the absence of written consent or a written request, Ms. Hamblin contenás that the insertion of the beneficiaries by Ms. Womac cannot be ascribeá to Mr. Suhren.
Ms. Hamblin further claims that Union Life breacheá its obligation to Mr. Suhreq in failing to follow its own proceáures re-garáing beneficiary áesignation. Union *190 Life’s beneficiary designation form provides:
A. COMPLICATED BENEFICIARY DESIGNATIONS. If there is any question about the beneficiary designation or how it should be worded to produce the desired effect, the problem should be presented to the Home Office in narrative form. The request form will then be prepared and returned for signature.
Ms. Hamblin argues that Union Life’s failure to prepare a request form to determine the correct beneficiary or to clarify which persons would benefit from the policies subjects the entire transaction to question. Further, Union Life procedures require that the insured be notified of any difference between the application and the policy.
We are not persuaded by Ms. Hamblin’s argument. The trial court found that the two policies in question were obtained to fund the A.C. Suhren, Jr. Trust No. 1 and the A.C. Suhren, Jr. Trust No. 2. The court further found insufficient evidence to reform the policies. These findings are clearly supported by the testimony of Leon Charles Adams, Mr. Suh-ren’s insurance agent of ten years, and Ben Teekel, the Union Life Insurance agent who assisted Adams in the issuance of both the 1983 and the 1985 policies. Although there are conflicts between the testimony of these two witnesses and that of Ms. Hamblin and Joel Gibert, the trial court implicitly found that the testimony of Adams and Teekel was more credible. When the trial court’s findings are based on determinations regarding the credibility of witnesses, the “manifest error-clearly wrong” standard demands great deference to the trier of fact’s findings. Rosell v. Esco, 549 So.2d 840 (La.1989). The Supreme Court stated in Rosell at pages 844 and 845:
Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder’s finding is based on its own decision to credit the testimony of one of two [sic] or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong, (citations omitted.)
Both Adams and Teekel testified that they met with Suhren in February of 1985, at which time Suhren filled out the application for one million dollars of life insurance. Both agents stated that at the time Suhren seemed confused as to who he wanted to designate as beneficiaries. Suh-ren instructed Adams to leave the beneficiary designation blank because some changes were being made and Suhren would notify Adams as soon as he knew who he would designate as the beneficiaries. Both agents testified that Suhren purposefully omitted the beneficiary designation, as well as his age from the application (because they had discussed back-dating the application to indicate Suhren's age as 59 rather than 60).
Adams testified that Suhren subsequently instructed him to list the A.C. Suhren, Jr. Class Trust and the A.C. Suhren, Jr. Trust No. 2 as the beneficiaries. This testimony was corroborated by Teekel’s testimony that he received a note from Adams listing these two trusts as the beneficiaries. Teekel forwarded the note to Union Life.
Both Adams and Teekel testified that Union Life subsequently requested the dates of the trusts by a memorandum dated March 12, 1985. A meeting with the two agents and Suhren was scheduled in order to obtain this information. Adams testified that because he was unexpectedly unable to go, his associate attended the meeting with Teekel. Teekel testified that only he and Suhren were present, and that he obtained the information from Suhren and relayed the names and dates of the trusts to the Union Life home office over the telephone in Suhren’s presence. That information was entered in the “For Home Office Use Only” box by Jane Womac, a Union Life employee, on the application earlier signed by Suhren.
*191 Both Adams and Teekel testified that together they hand delivered the two $500,-000.00 policies and the application (with the "Home Office Use” beneficiary designation) to Suhren in April of 1985. They went over each page of the policy with Suhren. They showed Suhren the premiums, made sure he understood everything in the policies, checked the spelling of his name, checked the amounts, went through the general provisions, the suicide clause, the grace period, and both showed him and read to him the beneficiary designations, the A.C. Suhren, Jr. Trusts Nos. 1 and 2. Both Teekel and Adams testified that they were not aware of who the beneficiaries of the trusts were, nor did Suhren provide this information.
Adams testified that Suhren contacted him to ask who the beneficiaries were in January 1987. He obtained a letter from Union Life dated January 21, 1987 providing that information (that the A.C. Suhren Trust No. 1 and the A.C. Suhren Trust No. 2 were the designated beneficiaries) and read the letter to Suhren over the phone. Suhren sounded uncertain of whether the designation of beneficiaries was correct. He told Adams he would contact him (Adams) if there were any changes. Suh-ren did not express any change at that time nor did he ever call Adams back with any changes.
Sandra Hamblin and Joel Gibert testified that A.C. Suhren expressed his concern to them that his two children be taken care of and that the proceeds of the two insurance policies go to the trusts in which they were named beneficiaries. Gibert and Hamblin also testified that they spoke with Mr. Adams on behalf of Mr. Suhren and Mr. Adams assured them that the beneficiary designations of the policies were in accordance with Mr. Suhren’s wishes. Mr. Adams denied having spoken with these persons before Mr. Suhren’s death.
Ms. Hamblin makes much of the letter signed by Charles Adams after the death of Suhren. In that letter to Ms. Hamblin, Adams states in part:
“Prior to his death, I had worked with your father for the purposes of acquiring two paid-up life insurance policies for $500,000.00 each from Union Life Insurance Company. To the best of my knowledge and belief, it was your father’s intent and desire that the beneficiaries of said policies be (1) the trust your father established for you as trust beneficiary and (2) the trust set up by your father for the benefit of your stepbrother as trust beneficiary; however, I was not consulted by him with respect to the preparation of the designation of beneficiary form.”
Adams testified that he meant by this letter that Suhren’s original intent in 1983 was to fund trusts set up for his children with a $1.5 million insurance policy. Adams admitted that Suhren never explicitly indicated that he had changed his intent to benefit his children. However, Adams and Teekel delivered the completed insurance application and policy to Suhren in 1985 and informed him at that time that the beneficiaries were the A.C. Suhren Trusts Nos. 1 and 2. Adams did not know who was named as a beneficiary of those trusts. This letter, executed after the death of Suhren, does not change the conclusion that Suhren was aware in 1985 that he had named the A.C. Suhren Trusts Nos. 1 and 2 as the beneficiaries of the policies in question.
Ms. Hamblin also stresses the Equifax credit report and the undated memo from Adams to Teekel, both of which indicate that the intended beneficiaries were the A.C. Suhren Class Trust and the A.C. Suh-ren Trust No. 2. However, we note that these documents were prepared prior to Suhren’s review of and approval of the “Home Office Use” beneficiary designations in the application.
We are not persuaded by Ms. Hamblin’s arguments.
The insurance policies in question contain the following relevant clauses:
CHANGE OF CONTRACT. The only way Your policy may be changed is by written agreement. It must be signed by one of Our Officers. No agent or other person has Our permission to change Your policy. No other person *192 has the right to tell You that one or more of its terms or provisions do not apply to You.
⅜ ⅝ ⅜ ⅜ ⅜ ⅜
BENEFICIARY. On the Policy Date, the Beneficiary is as named in the application. You must also check the application. It may have some conditions or provisions which affect the Beneficiary. Except as otherwise set out, the Proceeds are to be divided equally among all Primary Beneficiaries who survive the Insured. If none survive, Proceeds will be divided equally among all contingent Beneficiaries who survive the Insured. If no Beneficiary survives the Insured the Proceeds will go to You or to Your estate if You don’t survive the Insured.
CHANGE OF BENEFICIARY. Unless an irrevocable Beneficiary has been named You have the right to change the Beneficiary. Any change in Beneficiary must be in Writing. The change will take place the day You sign it. This is true even if the Inusred dies before We receive it. Of course this change will not affect any action We have taken before We receive the change. If an irrevocable Beneficiary has been named that Beneficiary must agree in Writing to any change. If you assign the policy You may also give up the right to change the Beneficiary. (Emphasis added.)
The second page of the insurance policy application, which page is signed by the insured, provides in relevant part:
IT IS AGREED: * * ⅜ * (5) the acceptance of any policy issued on this application shall constitute an acceptance and ratification of any corrections, additions or changes made by the Company in the space provided “For Home Office Use Only”, except that in states where required, any change in amount, classification, plan of insurance or benefits shall be subject to written ratification by the applicant.
The policy date is April 1, 1985. Suhren knew, as of the time of the meeting with Teekel and Adams (on April 3rd or 4th, or April 23rd or 24th, 1985) that Trusts Nos. 1 and 2 were the beneficiaries he had designated. At Suhren's request, Adams reminded Suhren in 1987 which trusts had been designated as beneficiaries. Suhren did not indicate to Adams at that time or any other time that he wished to change the designation. He simply stated that if he decided to change the beneficiaries, he would contact Mr. Adams. There is no indication in the record that Suhren had definitively decided to change the designated beneficiaries. Furthermore, even if Suhren had so decided, he was aware that under the terms of the policy, such a change could be effected only by a written request. He failed to make such a request.
In light of the testimony and the evidence presented, we cannot conclude that the trial court erred in finding that Suhren designated the A.C. Suhren Trust No. 1 and the A.C. Suhren Trust No. 2 as the beneficiaries of the policies in 1985, and that appellant failed to present sufficient evidence to require reformation of the policies. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.

. The reasons for the deterioration of the marriage are summarized in Suhren v. Suhren, 505 So.2d 129 (La.App. 4th Cir.1987).