442 So.2d 1310 (1983)
Wilene Adelle W. WATSON, Plaintiff-Appellant,
v.
Willie O. WATSON, Defendant-Appellee.
No. 83-306.
Court of Appeal of Louisiana, Third Circuit.
December 14, 1983.
William M. Wolfe, Pineville, for plaintiff-appellant.
Kennedy & Yeager, Ralph W. Kennedy, Alexandria, for defendant-appellee.
Before DOMENGEAUX, STOKER and YELVERTON, JJ.
DOMENGEAUX, Judge.
This appeal is from a judgment of separation granted to Wilene Adelle Watson and Willie O. Watson, based upon their mutual fault.
On July 29, 1982, Mrs. Watson filed suit for separation from bed and board against her husband.[1] In her petition, Mrs. Watson also sought custody of the minor child of their marriage, child support, alimony pendente lite, partition of the community property, and an injunction prohibiting Mr. Watson from alienating or encumbering the community assets.
Mr. Watson answered plaintiff's original petition and further assumed the position *1311 of plaintiff-in-reconvention seeking a judgment of separation, joint custody of the minor child, and dissolution of the community.[2]
The trial judge ordered a judgment of separation, finding that both parties were mutually at fault within the meaning of La.C.C. Art. 141.[3]
In his decree, the trial judge condemned each of the parties to pay one-half of the court costs therein. On February 1, 1983, Mrs. Watson appealed suspensively from the final judgment which was signed on January 3, 1983.[4] Her husband answered the appeal seeking a modification of the judgment to find fault solely on the part of Mrs. Watson.
The only issue presented for our consideration is whether the trial court erred in finding that the parties were mutually at fault in granting the separation.

FACTS
On July 16, 1982, Wilene Watson left the matrimonial domicile. She subsequently filed a petition for separation from bed and board on July 29, 1982, based upon grounds of cruel treatment and habitual intemperance. Mr. Watson denied her allegations in his answer and reconvened for a separation in his favor on grounds of cruel treatment and abandonment.
At trial, Mrs. Watson testified that Mr. Watson drank excessively which resulted in cruel and abusive conduct towards her and the children. She further testified that his drinking problem had worsened over the recent years and caused him to lose his temper, return home late from work, and intimidate and mistreat the members of their household. Mrs. Watson stated that she left the matrimonial domicile on the evening of July 16, 1982, because Mr. Watson failed to come home from a dental appointment. She testified that she believed he had gone out drinking and was afraid of his behavior so she took the children and left.
Cynthia Dean Watson, their 23 year old daughter, also testified at trial. She has always lived in the family home with Mr. and Mrs. Watson. She confirmed her mother's testimony. In addition, she stated that her father's drinking caused tension in the marital relationship. She further testified that when her father came home intoxicated, he was uncontrollable and often arguments would ensue.
Mr. Watson testified at trial that he had missed only one day of work, for his brother's funeral, in the sixteen years he had been working at the Kraft Pineville Paper Mill. Mr. Watson holds a supervisor position at the mill. He admitted on the stand that he once struck his wife eighteen years prior to the filing of the present suit. He also admitted that he whipped his children to discipline them.
Mr. Watson testified that his wife permitted their daughter's two dogs to stay inside the house, which made living conditions unsanitary and caused many arguments between them. He also stated that Mrs. Watson neglected the household duties.
Mr. Watson testified that his wife refused to let him drink beer at home and constantly harassed him about drinking with friends after working hours. He refuted *1312 the testimony given by his wife and daughter that he drank excessively almost every night. Mr. Watson stated that he drank beer only after work when he was assigned to the 3 to 11 shift at the Pineville Kraft Paper Mill, which was approximately one or two nights out of each month.
Several witnesses testified on behalf of Mr. Watson. Some were business associates who worked with him at the paper mill. Others were friends of the family who often went deer hunting with Mr. Watson; Mrs. Watson usually accompanied them. All of them contradicted the allegation that Mr. Watson had a drinking problem.
Mr. Watson stated that after Mrs. Watson left the matrimonial domicile he repeatedly tried to persuade her to come home, but she refused. She told him she wanted a divorce and planned to move to Idaho where her family lived.

MUTUAL FAULT OF THE PARTIES
As to petitioner's assignments of error, it is to be noted that in separation proceedings, the trial court's finding of fact on the issue of fault will not be disturbed on appeal unless manifestly erroneous. Pearce v. Pearce, 348 So.2d 75 (La.1977).
Plaintiff argues that the trial court committed error of law in determining that she was at fault. We find no merit to any of her assignments of error.
The evidence presented at trial substantiates the allegations of each party. Mr. Watson's fault consisted of acts of intemperance and cruel treatment "of such a nature as to render [the couple's] living together insupportable." La.C.C. Art. 138; Harrington v. Campbell, 413 So.2d 297 (La.App. 3rd Cir.1982). Mrs. Watson's fault consisted of "acts of commission or omission violative of her marital duties which precludes her from alimony after divorce." Pearce v. Pearce, supra, at 77.
The fault required to form the basis of a mutual fault separation is conduct constituting an independent ground for separation under La.C.C. Art. 138. Adams v. Adams, 389 So.2d 381 (La.1980). It is not necessary for spouses to be guilty of equal fault as long as each spouse is found to have committed acts which constitute grounds for separation under La.C.C. Art. 138. Post v. Post, 376 So.2d 1275 (La.App. 2nd Cir.1979). Additionally, the fault must be an independent contributing cause of the separation. Saucier v. Saucier, 357 So.2d 1378 (La.App. 4th Cir.1978).
It is apparent that the trial judge believed that each spouse sustained their burden of proof by establishing fault on the part of the other spouse. The trial judge further concluded that the fault of each party was sufficient to award the other a judgment of separation, and therefore their respective fault is deemed to be mutual. Adams v. Adams, supra at 382. There is substantial evidence to support the trial judge's determination that appellant and her husband were mutually at fault within the ambit of La.C.C. Art. 141[5]. Miller v. Miller, 398 So.2d 1162 (La.App. 2nd Cir.1981). There exists no manifest error in the trial court's findings.

DECREE
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed equally between plaintiff and defendant.
AFFIRMED.
STOKER, J., concurs in part and dissents in part and assigns reasons.
STOKER, J., concurring in part and dissenting in part.
I fully concur in that portion of the majority opinion which affirms the trial court's evident finding that the plaintiff, Wilene Adelle Watson, was entitled to a *1313 separation based on the defendant husband's intemperance and cruel treatment.
I respectfully dissent with respect to the finding that the separation should be grounded on mutual fault of the parties. The trial court did not favor us with written reasons for judgment and his oral reasons were not recorded. We do not know what the trial court found in any conduct of Mrs. Watson that would have constituted fault, which standing alone, would be sufficient to justify the granting of a separation to Mr. Watson. It could not have been grounded on abandonment because Mr. Watson had given Mrs. Watson lawful cause justifying her withdrawal from the matrimonial domicile. See our opinion in Langton v. Langton, 442 So.2d 1308 (La. App. 3rd Cir.1983). Moreover, abandonment was not pleaded as a ground for separation in Mr. Watson's reconventional demand.
The trial court's finding of mutual fault necessarily must rest on a finding of cruel treatment by Mrs. Watson "of such a nature as to render their living together insupportable." LSA-C.C. Art. 138. The only evidence in the record to support a claim of cruel treatment by Mrs. Watson is the testimony of Mr. Watson. His testimony covers only two complaints. One claim is that Mrs. Watson allowed their daughter's two dogs to have the run of the house, and (evidently not being house trained) they spoiled the floor, drapery and other portions of the house. The other complaint was that Mrs. Watson did not cook meals as she once did and depended to a large extent on serving hamburgers.
The charge concerning the dogs obviously could be a very serious matter, but I do not find that it shines through as a very serious matter in Mr. Watson's testimony. He made no reference to this complaint in his reconventional demand. Most damaging, however, is Mr. Watson's own testimony that he kept the dogs in the house himself after Mrs. Watson left the home. Mr. Watson's testimony relative to the dogs as it stands is not convincing that a condition existed which made living in the home with Mrs. Watson insupportable.
Relative to Mrs. Watson's cooking, the complaint is not that Mrs. Watson failed to cook or prepare meals. Mr. Watson's complaint was that she did not serve the kind of meals she had served in the past. This alone does not show living with Mrs. Watson was insupportable. Moreover, there was testimony that Mrs. Watson's health was not as good as it had been in former years which might excuse such cooking habits if there was any truth to the complaint.
In my opinion Mrs. Watson was not at fault so as to make applicable the mutual fault provisions of LSA-C.C. Art. 141. The sole testimony bearing on her alleged fault (other than her complaints about his drinking) consists of the following testimony of Mr. Watson:
"Q Tell us about the house, in particular your wife's dogs.
A Well, we've had, we've had some pretty stiff arguments about the dogs and the carpet, the drapes and uh, the way the kids keep their rooms, and uh, just, just general, just dogs messing, the whole carpet in the house where they, they went to the bathroom on it, and we've had, we've had a considerable amount of trouble about that, arguments, not no trouble, just big arguments, incidents.
Q What about the drapes.
A Well, I thought I'd surprise her when she went off to Idaho and come back I had her a pair of drapes put up, Four Hundred and Eighty Dollars ($480.00), Four Hundred and Sixty Dollars ($460.00), ...
Q Did the dogs ruin the drapes.
A Well you can see where they, the male dog has went all over the drapes and uh, they will be ruined, I guess, they can be cleaned, but still, uh, I thought I was just doing something to help her feelings.

*1314 Q What about the care of yourself, does your wife cook for you and the family.
A At times she cooked pretty good, and at times it looked like she, she would, we would eat a lot of hamburgers and stuff and uh, she never, like she never did cook like she did when we was living in Idaho around her folks, because every day at 5:30 in Idaho you could count on it, just like clock work, supper was on the table.
Q It is not that way any more, or at least it was not that way any more.
A As we moved onas we moved on to Texas and Georgia and around, well, they just got, it just got different, that's all, I don't know whether, which fault, you know, it just got, it was just that way."
I am of the opinion that the trial court was clearly wrong in granting a separation based on mutual fault. The judgment should have been granted in Mrs. Watson's favor without a finding of fault on her part. Accordingly, I concur in part with the majority opinion but dissent in part as explained above.
NOTES
[1] Wilene Watson and Willie O. Watson were married for twenty-seven years, with two children, ages 23 and 16.
[2] A hearing pursuant to rule filed by plaintiff was held on September 3, 1982, concerning the issues of child custody, child support, alimony pendente lite, and the injunction against disposition of the community property. Both parties stipulated to Mrs. Watson's right to exclusive occupancy of the family home (subject to the condition that she pay the monthly mortgage note and telephone bill), to a temporary child custody award to Mrs. Watson (subject to reasonable visitation rights), and to a combined alimony pendente lite and child support award of $750.00 per month.
[3] La.C.C. Art. 141 provides:

"A separation from bed and board shall be granted although both spouses are mutually at fault in causing the separation. In such instances, alimony pendente lite may be allowed but permanent alimony shall not be allowed thereafter following divorce."
[4] A suspensive appeal was granted with no bond required, as provided by law under La.C.C.P. Art. 3942; Young v. Young, 413 So.2d 673 (La. App. 1st Cir.1982).
[5] For a comprehensive analysis of the effects of judicial separation based upon "mutual fault," see generally Comment, The Fault Preclusion to Post-Divorce Alimony in Louisiana, 57 Tul.L. Rev. 351, 370-372 (1982).