462 So.2d 1386 (1985)
Mildred A. BROUSSARD, Plaintiff-Appellant,
v.
Daniel G. BROUSSARD, Defendant-Appellee.
No. 84-72.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1985.
*1387 J.N. Prather, Jr., Lafayette, for plaintiff-appellant.
G. Paul Marx, Lafayette, for defendant-appellee.
Before DOMENGEAUX, STOKER and KING, JJ.
KING, Judge.
The issues presented by this appeal are whether the trial court erred in denying permanent alimony after divorce and whether the trial court awarded a sufficient amount for child support.
Mildred A. Broussard and Daniel G. Broussard were married on October 14, 1978. One child, Christina, was born of the marriage and was four years old at the time of trial. After a number of separations and reconciliations, the parties began living separate and apart on March 20, 1981.
On March 28, 1982, Mrs. Broussard filed suit for a divorce on the basis of having lived separate and apart from her husband for more than one year. Mrs. Broussard also sought sole custody of Christina, child support in the sum of $500.00 per month, and alimony in the sum of $250.00 per month. Mr. Broussard reconvened seeking joint custody of Christina and praying that Mrs. Broussard's claims for child support and alimony be dismissed. In her supplemental and amending petition, Mrs. Broussard alleged that she left the matrimonial domicile voluntarily due to Mr. Broussard's mental and physical cruelty and his habitual intemperance. This was denied by Mr. Broussard.
After trial on the merits, judgment of divorce was granted on the basis of the parties having lived separate and apart for more than one year, and sole custody of Christina was granted to Mrs. Broussard, subject to visitation by and with Mr. Broussard. The trial court ordered that Mr. Broussard pay child support in the sum of $250.00 per month and further ordered that he provide medical and dental insurance for Christina. Mrs. Broussard's claim for permanent alimony after divorce was denied upon the trial court finding that she was not free from fault in the termination of the marriage. Mrs. Broussard appeals seeking to reverse the trial court's judgment denying her permanent alimony after divorce and seeking an increase in the amount of child support awarded by the trial court. We affirm both the trial court's denial of permanent alimony after divorce and the amount awarded for child support.

PERMANENT ALIMONY
In order to receive permanent alimony after divorce, the claimant spouse must be free from fault. LSA-C.C. Art. 160. The "fault" contemplated in Art. 160 is synonymous with the fault grounds for separation and divorce contained in LSA-C.C. Arts. 138 and 139. Boudreaux v. Boudreaux, 407 So.2d 1363 (La.App. 3rd Cir.1981). It is not necessary that a spouse be totally blameless in the marital discord; the fault must be an independent contributory or approximate cause of the separation. Watson v. Watson, 442 So.2d 1310 (La.App. 3rd Cir.1983), writ den., 445 So.2d 450 (La.1984); Palmer v. Palmer, 433 So.2d 346 (La.App. 3rd Cir.1983), writ den., 441 So.2d 213 (La.1983); Herrington v. Campbell, 413 So.2d 297 (La.App. 3rd Cir. 1982). The spouse seeking permanent alimony has the burden of proving freedom from fault. Palmer v. Palmer, supra.
In his oral reasons for judgment, the trial judge made the following finding:
"... However, the plaintiff has failed to establish by a preponderance of the evidence that the defendant was at fault or *1388 that she wasor that the plaintiff was free from fault, and therefore the Court will deny alimonydeny permanent alimony."
No further indication is given in the reasons for judgment as to the specific fault found on the part of Mrs. Broussard. Mr. Broussard asserts that she is at fault due to abandonment and cruel treatment. Mrs. Broussard asserts that Mr. Broussard was guilty of cruel treatment and habitual intemperance which justified her leaving the matrimonial domicile. Mr. Broussard's fault is relevant only insofar as it may have excused Mrs. Broussard's "abandonment."
The only testimony present at trial regarding fault by the parties is that of Mr. and Mrs. Broussard. Their testimony is conflicting, and the allegations made by each are denied by the other.
According to Mrs. Broussard, her husband was guilty of acts of mental cruelty through telling her that she was worthless and by doing things calculated to make her feel worthless. Mrs. Broussard also claims instances of physical cruelty, some of which occurred after the separation. She testified at trial that she frequently was forced to sleep on the couch because her husband would "accidentally" hit her in his sleep. Her allegations of habitual intemperance are based on a general assertion that her husband began drinking heavily before they finally separated.
Mr. Broussard denies all allegations of cruelty and habitual intemperance made by Mrs. Broussard. He claims that she was mentally cruel by repeatedly leaving the matrimonial domicile giving no reason other than that she no longer wanted to be married. He also claims that she arbitrarily refused him sexual relations. He testified that this refusal was frequent toward the end of the marriage.
In our opinion that evidence shows, not abandonment by Mrs. Broussard, but a mutual agreement by the parties that she would leave the matrimonial domicile. Such an agreement is not sufficient to show the fault on the part of the leaving party. See Gilberti v. Gilberti, 338 So.2d 971 (La.App.4th Cir.1976). We are further supported in this conclusion by a document presented into evidence at the time of the trial by Mr. Broussard. The document is an affidavit executed by both Mr. and Mrs. Broussard on the date they physically separated, March 20, 1981. It reads as follows:
"Before me, the undersigned Notary, and in the presences (sic) of the undersigned witnesses, personally came and appeared, Daniel G. Broussard and Mildred A. Broussard, husband and wife, who declared that as of Friday, March 20, 1981, they have begun to voluntarily live separate and a part (sic); that neither has grounds for a separation other than irreconcilable differences.
"This affidavit is made so that either party can show that there has been no abandonment by one spouse of the other.
"Furthermore, Mildred A. Broussard, in consideration of this Agreement and other valuable consideration, agrees to waive her rights to alimony.
"Daniel G. Broussard to have the child, Mary Christina Broussard, from Friday Seven o'clock (7:00) P.M. to Seven o'clock (7:00) P.M. Sunday night for visitation every weekend and Daniel G. Broussard will pay $250.00 a month for the child's support, payable on the first day of the month."
Mrs. Broussard makes a general claim that she executed the document under duress, and testified that she knew the provisions regarding her waiver of alimony was unenforceable. According to counsel for Mr. Broussard, the document was entered into evidence, not for the purpose of seeking enforcement, but to impeach Mrs. Broussard's credibility concerning her reasons for leaving and to corroborate Mr. Broussard's claim that she left him without just cause. We find that it is not clear from the affidavit whether the waiver of alimony was for alimony pendente lite or permanent alimony, but we note that a waiver of permanent alimony may be valid under the most recent matrimonial regimes legislation. See the discussion in Monk v. *1389 Monk, 376 So.2d 552 (La.App. 3rd Cir. 1979).
When questioned about the document, Mr. Broussard testified that he did not force Mrs. Broussard to sign the agreement, but that she would not leave until it was signed. He also asserted that Mrs. Broussard hired the attorney who drew up the agreement, but he agreed to pay the attorney's fees. Mr. Broussard makes no claim that he was under any duress to make the agreement; therefore, we disagree with his claim that the agreement corroborates his position that he was abandoned. Mr. Broussard's testimony and the agreement clearly show that all parties reached a mutual agreement that Mrs. Broussard should leave the matrimonial domicile.
A trial judge's determination on the issue of fault is a factual finding which cannot be disturbed on appeal absent manifest error. Pearce v. Pearce, 348 So.2d 75 (La.1977); Tate v. Tate, 442 So.2d 1379 (La.App. 3rd Cir.1983). It is well settled that the unjustified persistent refusal of sexual intercourse to one's spouse is cruel treatment constituting fault under LSA-C.C. Art. 138 and is a legal ground for separation. Von Bechman v. Von Bechman, 386 So.2d 910 (La.1980); Morgan v. Morgan, 462 So.2d 897 (La.App. 3rd Cir. 1984); Bourque v. Landry, 293 So.2d 218 (La.App. 3rd Cir.1974); Taddonio v. Kinney-Taddonio, 428 So.2d 486 (La.App. 4th Cir.1983); Saucier v. Saucier, 357 So.2d 1378 (La.App. 4th Cir.1978).
The trial judge obviously chose to believe the husband's testimony that his wife persistently and unjustifiably denied him sexual relations. In this delicate area of marital relations the trial judge will almost always be faced with determining the credibility of a husband and wife for the simple reason that witnesses are rarely present before, during, or immediately after the sexual acts of a married couple which usually take place in private.
As appeal court judges, we are only able to review the cold words of the witnesses' testimony as reflected in the black type on the white paper of a transcript of testimony made by a court reporter. We are not able to see and hear the witnesses as is the trial judge. The witnesses' mannerisms, gestures, voice inflections, body movements, and other subtle actions while on the witness stand giving testimony can be seen and heard by the trial judge and are part of his evaluation of a witness' credibility. In Pearce v. Pearce, 348 So.2d 75 (La.1977), the Louisiana Supreme Court stated that:
"... In the area of domestic relations, much discretion must be vested in the trial judge and particularly in evaluating the weight of evidence which is to be resolved primarily on the basis of the credibility of witnesses. The trial judge having observed the demeanor of the witnesses is in the best position to rule on their credibility. Trosclair v. Trosclair, 337 So.2d 1216 (La.App. 1st Cir.1976). The factual findings of the trial court are therefore to be accorded very substantial weight on review. Gilberti v. Gilberti, 338 So.2d 971 (La.App. 4th Cir.1976)."
We have carefully considered the evidence in this case in light of the rule of appellate review set forth in Arceneaux v. Arceneaux, 426 So.2d 745 (La.App. 3rd Cir.1983) and Canter v. Koehring Company, 283 So.2d 716 (La.1973) and we conclude that the trial court did not clearly err in accepting the testimony of Mr. Broussard over that of Mrs. Broussard.

CHILD SUPPORT
Mrs. Broussard asserts that the $250.00 per month awarded to her for child support along with the requirement that Mr. Broussard pay medical and dental insurance for the minor child is not sufficient. She seeks an increase in the amount of child support to $500.00 per month. Mrs. Broussard's affidavit of income and expenses indicates she has no income but has monthly expenses in the amount of $1,736.68, of which $678.06 is attributable to the minor child of the marriage. Mrs. Broussard also has an older child who was not born of this marriage. She introduced into evidence a ledger sheet indicating that she has received over $25,000.00 from her *1390 father from the time she and Mr. Broussard separated up until March of 1983. According to Mrs. Broussard, these funds were for the necessities of life and she is obligated to repay her father for these amounts. At the time of trial, June 1983, Mrs. Broussard was a senior majoring in criminal justice at the University of Southwestern Louisiana and she expected to graduate in December of the same year. Her resume introduced into evidence by Mr. Broussard indicates that she had previously been gainfully employed.
Mr. Broussard's affidavit of monthly income and expenses dated April 25, 1983 shows that he has a total net monthly income of $1,739.00 and expenses in the amount of $1,529.00, a difference of $210.00. Mr. Broussard's financial declaration dated April 28, 1980 shows that he had a net monthly income of $1,342.00 and expenses in the amount of $1,102.00, a difference of $240.00. The 1983 affidavit of income and expenses shows substantial increases in Mr. Broussard's entertainment and travel expenses, installment payments and incidentals such as personal grooming, gifts, alcohol and tobacoo.
In considering the affidavits of income and expenses filed by the parties, the circumstances and resources of each and the needs of the child, we find that the trial court did not abuse its wide discretion in awarding $250.00 per month in child support.
For the reasons given above, the trial court's judgment denying permanent alimony to Mrs. Broussard and awarding her child support of $250.00 per month is affirmed. The plaintiff-appellant is cast with all costs of this appeal.
AFFIRMED.
STOKER, J., concurring in part and dissenting in part for which written reasons are assigned.
STOKER, Judge, concurring in part and dissenting in part.
I concur in the affirmance of the trial court's award of child support.
I respectfully dissent from that portion of the majority opinion which holds that Mrs. Broussard is not free from fault, and thus not entitled to permanent alimony. I agree that the evidence shows no abandonment by Mrs. Broussard, but only a mutual agreement to separate. I disagree that the trial judge could have found mental cruelty by Mrs. Broussard due to a persistent refusal of sexual relations.
As stated by the majority, it is not necessary that a spouse be totally blameless in the marital discord; the fault must be an independent contributory or proximate cause of the separation. Harrington v. Campbell, 413 So.2d 297 (La.App. 3rd Cir. 1982). In order to constitute cruel treatment, the denial of sexual relations must be persistent and unjustified. Von Bechman v. Von Bechman, 386 So.2d 910 (La. 1980). Mr. Broussard testified that his wife arbitrarily denied him sexual relations and that this denial became more frequent toward the end of the marriage. Mrs. Broussard testified that she frequently was forced to sleep on the couch because her husband would "accidentally" hit her in his sleep.
In our opinion, the trial court could not have found that the testimony of either of the parties established a persistent and unjustified refusal of sexual relations. The testimony clearly establishes a pattern of mutual incompatibility which is not sufficient to constitute cruel treatment. See Langton v. Langton, 442 So.2d 1308 (La. App. 3rd Cir.1983). It is clear from the testimony of both Mr. and Mrs. Broussard that their relationship deteriorated rapidly toward the end of the marriage.
For these reasons, I respectfully dissent from that portion of the majority opinion finding that Mrs. Broussard is not entitled to permanent alimony. I would reverse this portion of the trial court's judgment and remand the case to the trial court for further proceedings. I would assess the costs of this appeal to defendant-appellee.
CONCURRING IN PART, DISSENTING IN PART.