778 So.2d 70 (2000)
Jimmie B. HAMMACK
v.
Sharyn Kathi Dunn HAMMACK.
No. 99 CA 2809.
Court of Appeal of Louisiana, First Circuit.
December 22, 2000.
Rehearing Denied March 1, 2001.
*71 Lee Herrington, Baton Rouge, Counsel for Plaintiff/Appellant Jimmie B. Hammack.
Alan S. Fishbein, Baton Rouge, Counsel for Defendant/Appellee Sharyn Kathi Dunn Hammack.
Before CARTER, C.J., WEIMER and DURWOOD W. CONQUE[1], JJ.
CONQUE, J.
This is an appeal from a judgment finding appellant's former wife free from fault in the breakup of the parties' marriage and awarding her final periodic spousal support in the amount of $800 a month.
Dr. Jimmie B. Hammack and Sharyn Kathi Hammack were married on July 24, 1998. On December 23, 1998, after ten years of marriage, Dr. Hammack, filed a petition for divorce pursuant to La. C.C. art. 102, based on living separate and apart for over six months. Kathi Hammack reconvened for periodic spousal support. The judgment of divorce was signed on August 2, 1999, and trial on the reconventional demand was held on August 13, 1999.
At the trial, the evidence presented centered on the relationship between Kathi Hammack and Dr. Jimmie Hammack's children from his prior marriages. Although Kathi Hammack contended that she was free from fault, Dr. Hammack argued that her animosity toward his children is what led to the breakup of the marriage.

DISCUSSION
The issues at trial were limited to those presented by the provisions of the Louisiana Civil Code pertaining to periodic spousal support, as amended and reenacted, effective January 1, 1998. The relevant provisions are:
Art. 111. Spousal support; authority of court
In a proceeding for divorce or thereafter, the court may award interim periodic support to a party or may award final periodic support to a party free from fault prior to the filing of a proceeding to terminate the marriage, based on the needs of that party and the ability of the other party to pay, in accordance with the following Articles.
Art. 112. Determination of final periodic support
A. The court must consider all relevant factors in determining the entitlement, amount, and duration of final support. Those factors may include:
(1) The needs of the parties.
(2) The income and means of the parties, including the liquidity of such means.
(3) The financial obligations of the parties.
(4) The earning capacity of the parties.
(5) The effect of custody of children upon a party's earning capacity.
(6) The time necessary for the claimant to acquire appropriate education, training, or employment.
(7) The health and age of the parties.
(8) The duration of the marriage.
(9) The tax consequences to either or both parties.
B. The sum awarded under this Article shall not exceed one-third of the obligor's net income.
*72 Fault, after the amendments to the code articles, continues to mean misconduct that rises to the level of one of the previously existing fault grounds for legal separation or divorce.[2] The burden of proving freedom from fault is upon the claimant. To constitute fault sufficient to deprive a spouse of permanent alimony, the spouse's misconduct must not only be of a serious nature, but it must also be an independent, contributory, or proximate cause of the separation.[3] The only significant change related to the issue of fault found in the 1997 amendments is that, unlike prior law, La. C.C. Art. 111 now explicitly requires that the fault of the claimant precluding an award of spousal support must have occurred prior to the filing of the "proceeding to terminate the marriage".
The facts show that the parties had no children during their marriage. Kathi Hammack had been married twice before, but had no children of her own. Dr. Hammack had also been married twice before. He had three children during his first marriage a daughter, Laura, who is now married and has a son of her own, and two sons, Bryant, who died nine months after the parties were married, and Jason, who was twenty-five at the time of trial. During his second marriage, Jimmie Hammack had another son, Jeffery, who was sixteen at the time of the trial. Jeffery lived with his mother and visited at his father's home.
Kathi Hammack did not have a good relationship with her husband's children, and Dr. Hammack contends that the animosity between her and his children was her fault. He maintains that she wanted nothing to do with the children, and eventually drove them away from his home. He urges that her behavior toward his children ruined their marriage.
Even before the marriage, then sixteen year old Laura and Kathi Hammack got off on the wrong foot. Laura was a typical teenager and Kathi Hammack was the new wife. They did not like each other and settled into a pattern of generally ignoring each other. The antagonism between them grew worse over the years, and they eventually stopped speaking to each other. When Laura was married, Kathi Hammack was not invited to the wedding, and her presence caused quite a stir when she decided to go anyway. Laura and her mother were openly critical of Kathi Hammack's dress and behavior at the wedding, and there was even a physical altercation between Laura's mother and Kathi Hammack. Later, when Laura had a son, the first grandchild in the family, Dr. Hammack felt that Kathi wanted nothing to do with that child. This further widened the gap between them.
Jeffery was only about four years old when the parties were married. Dr. Hammack testified that everything seemed fine between Kathi and Jeffery until once, when he was eight or nine years old, he apparently put a stapler in his bag without permission as he was leaving the Hammack home after a regular weekend visit. Kathi interpreted his act as "stealing". On other occasions, Kathi Hammack accused Jeffery of taking other items without permission, including a hand-held calculator and a pair of exercise shorts. She came to believe that Jeffery was "a little thief", and sometimes referred to him as such. She did not want him in the house without supervision for fear that he would steal. Dr. Hammack contends that his wife's attitude toward Jeffery hurt him deeply and convinced him that the marriage was doomed.
Kathi Hammack does not deny that her relationship with her husband's children was strained. But the testimony at trial showed that her appraisal of the children's *73 behavior was not without some basis in truth, and that the acrimony between them was mutual. She denies that she either drove the children from their father's home or kept them from visiting there with him. She maintains that, during the course of the marriage, she made sincere efforts to become part of the family and to support her husband's participation in the lives of his children.
The trial court found that Kathi Hammack's behavior did not rise to the level of fault that might constitute an independent cause of the breakup of this marriage, and so preclude an award of final periodic support. The trial court wrote:
This court finds that these parties had the normal problems that married couples do where stepchildren are involved. This court finds it hard to believe, based on all of the relevant testimony and argument by the attorneys that Mrs. Hammack single-handedly kept Dr. Hammack's children away from his house and kept him from having a relationship with his children. The strained relationship between Mrs. Hammack and Dr. Hammack's children is not sufficient in and of itself to be serious misconduct constituting an independent cause for the breakup of this particular marriage.
As with any factual finding, a trial court's findings relative to the issue of fault in domestic cases are entitled to great weight and will not be overturned on appeal absent manifest error. This court has held that a spouse need not be totally blameless to receive permanent alimony.[4] In this imperfect world, all spouses have faults, and a spouse need not be perfect to be free from legal fault.[5] Based upon the evidence and testimony of the parties, we find the trial court was not manifestly erroneous in finding defendant free from fault.
Dr. Hammack urges further that the trial court erred in awarding $800.00 per month in final periodic support. Once the trial court determines that the party claiming support is free from fault, it may then award periodic support based on the needs of that party and the ability of the other party to pay.[6] That is precisely what the trial court did, making findings of fact regarding both Kathi Hammack's needs and Dr. Hammack's ability to pay.
The trial court begins its analysis with this statement:
Now that the court has determined that Mrs. Hammack was not at fault in the breakup of the marriage, the next issue that the Court must consider is whether or not she is in necessitous circumstances.
The term "necessitous circumstances" is a carry-over from cases which applied article 112 A(1) of the Louisiana Civil Code prior to the Spousal Support Act of 1997. That Article previously read, in pertinent part, as follows:
When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, permanent periodic alimony which shall not exceed one-third of his or her income. (Emphasis supplied.)
The courts recognized the requirement under the old law to prove both freedom from fault and necessitous circumstances.
It is well settled that the party seeking alimony has the burden of proving necessitous circumstances or insufficient means for his maintenance. Kean v. Kean, 388 So.2d 398, 400 (La.App. 1st Cir.1980). In determining whether a former wife is entitled to post-divorce *74 alimony, the criteria is whether the wife has sufficient means for her support, not whether she has some means for her maintenance. Vorisek v. Vorisek, 423 So.2d 758, 764 (La.App. 4th Cir.1982).[7]
Based on the prior statutory provisions, permanent alimony was awarded to a former spouse in need, and it is limited to an amount sufficient for the former spouse's maintenance.[8] Since the claimant spouse had the burden of proving insufficient means of support, the next inquiry after the fault issue was whether the spouse claiming support has proved insufficient means for support.[9]
However, under present law, the claimant spouse has only to prove freedom from fault in order to qualify for periodic spousal support. The requirement that the claimant spouse also prove that she has not sufficient means for support is no longer included in the statutory language as a threshold criteria for entitlement to support. Hence, the statutory basis for limiting support to a spouse in necessitous circumstances no longer exists.[10]
What then is the court required to consider, under present law, once it has determined that the claimant spouse is free from fault? The answer is in the present language of Civil Code Articles 111 and 112. Civil Code Article 111 indicates that the court may award support "based on the needs of that party and the ability of the other party to pay, in accordance with the following Articles." See also Comment (b) to Article 111. Civil Code Article 112 then provides, in pertinent part, that "The court must consider all relevant factors in determining the entitlement, amount and duration of final support." (Emphasis supplied.) Then Article 112 goes on to list nine (9) factors that may be included in the court's analysis, only one of which is "the needs of the parties."
In this particular case, the relevant factors relied on by the trial court include the income and the means of the parties, their needs, and their earning capacity. The trial court found Kathi Hammack's total gross monthly income to be $1,309.00, (net after deductions is $1,044.02), while her reasonable expenses are $2,063.27 (exceeding her net income by $1,019.25). Dr. Hammack's gross monthly income is $23,000.00 (net after deductions is $14,227.00). The trial court noted that, while Dr. Hammack's expenses also exceed his net income, some of his expenses should be disallowed or reduced, such as $860.00 for "miscellaneous expenses", $800 for "travel" and unspecified "frequent gambling expenses".
The evidence shows that Kathi Hammack is working fifty to fifty-five hours a week, holding down two jobs. She was questioned at length during the trial regarding her previous employment history and experience in business, in an effort by the appellant to prove that she is capable of earning much more. The trial court did not agree, finding that none of her former jobs paid any more than her current two jobs combined. For this reason, the court found that she is working at the level of her earning capacity.
Kathi Hammack was also questioned thoroughly about her needs, or expenses. Dr. Hammack argues specifically that she need not pay rent, since she could live with her mother, and that she has incurred an unreasonably lavish car note by the purchase of a used 1997 Jeep Grand Cherokee for $20,000. The trial court found that, "none of her expenses fall in excess of a reasonable need".
*75 Finally, Dr. Hammack complains that his spouse should not be entitled to support because she had approximately $24,000 in the bank, which she could use to help support herself. However, the evidenced established that a large portion of her savings has been earmarked for the payment of taxes, while another portion is in an IRA account.
The trial court, in accord with Civil Code articles 111 and 112 carefully examined the totality of the circumstances in this case and made his award based on all the relevant factors testified to in court by the parties. Considering the evidence and the well-reasoned decision of the trial court, we find no abuse of discretion or error in the trial court award of final periodic support.
All costs of this appeal are assessed to Dr. Jimmie B. Hammack.
AFFIRMED.
NOTES
[1] Hon. Durwood W. Conque, 15th Judicial District Court, is serving pro tempore by special Appointment of the Louisiana Supreme Court.
[2] Almon v. Almon, 97-2004 pp. 5-6 (La.App. 1 Cir. 9/25/98), 718 So.2d 1073, 1077
[3] Allen v. Allen, 94-1090 (La.12/12/94), 648 So.2d 359; Adams v. Adams, 389 So.2d 381, 383 (La.1980).
[4] Bruce v. Bruce, 96 1973, p. 4 (La.App. 1st Cir.6/20/97), 696 So.2d 661, 663.
[5] Brewer v. Brewer, 573 So.2d 467, 469 (La. 1991).
[6] La. C.C. art. 111
[7] Alford v. Alford, 610 So.2d 923 (La.App. 1 Cir.1992).
[8] Settle v. Settle, 25,643, p. 6 (La.App. 2nd Cir.3/30/94) 635 So.2d 456, 460, writ denied, 94-1340 (La.9/16/94), 642 So.2d 194
[9] Moreau v. Moreau, 553 So.2d 1064, 1065 (La.App. 3rd Cir.1989)
[10] McKneely v. McKneely, 98-2472 (La.App. 1 Cir. 6/14/00, 764 So.2d 1157).