804 So.2d 161 (2001)
John H. JONES, Plaintiff-Appellant,
v.
Evelyn J. JONES, Plaintiff-Appellee.
Evelyn J. Jones, Defendant-Appellant,
v.
John H. Jones, Defendant-Appellee.
Nos. 35,502-CA, 35,503-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 2001.
*163 Rankin, Yeldell, Herring, Katz & Downs, by Stephen J. Katz, Diane Hill, Monroe, Counsel for Appellant.
Loomis & Dement by Albert E. Loomis, III, Monroe, Counsel for Appellee.
Before STEWART, GASKINS and CARAWAY, JJ.
GASKINS, J.
The plaintiff, John H. Jones, appeals a trial court judgment ordering him to pay final periodic spousal support to the defendant, Evelyn J. Jones, in the amount of $2,000.00 per month. In the alternative, he claims that the amount of alimony is factually and legally insupportable. We affirm in part and amend in part the trial court judgment.

FACTS
The parties were married in July 1972 and physically separated in September 1999. They had two daughters. One had reached majority when the marriage broke up. The other daughter was 17 years old. Mr. Jones filed for divorce on October 19, 1999. On October 20, 1999, Mrs. Jones filed a petition for interim spousal support and child support without demand for divorce.[1] She was granted $1,500.00 per month in interim spousal support. She was also granted $1,016.00 per month in child support for 4½ months. The payments ceased when the child reached majority. Mr. Jones did not promptly pay the interim spousal support obligation and the arrearage became the issue of a prior appeal in this case. See Jones v. Jones, 34,822 (La.App.2d Cir.6/20/01), 793 So.2d 243.
In February 2000, Mrs. Jones filed the present suit for final periodic spousal support. She claimed that she was free from fault and is in necessitous circumstances. She essentially argued that the break up of the marriage was due to adultery by Mr. Jones.
A hearing on the issue of final periodic spousal support was held on February 15, 2001. Mrs. Jones claimed that her former husband left her and filed for divorce because he was having an affair with another woman.
Mr. Jones contended that his former wife was not free from fault. He claimed that she frequently hit and scratched him when they had arguments. He presented testimony from co-workers that he often had scratches he claimed were inflicted by Mrs. Jones. According to Mr. Jones, he left the marital domicile at the request of Mrs. Jones, after she physically attacked him and gave him a bloody nose. Mr. Jones claimed that his former wife ceased having a physical relationship with him 2½ years before he left. He also claimed that Mrs. Jones spent large sums of money, frequently overdrawing the checking account. He also said that she went to the casinos to gamble with her friends.
At the close of the hearing, the trial court ruled in favor of Mrs. Jones, awarding her $2,000.00 per month in final periodic spousal support. In oral reasons for judgment, the trial court found Mrs. Jones to be a credible witness and that Mr. *164 Jones was less credible. The court found Mrs. Jones to be free from fault. She stated that "The only thing I find that could remotely approach any fault is the discussion of whether Mrs. Jones gambled." The court found that Mrs. Jones' gaming activities did not rise to the level of fault. The court noted Mrs. Jones' age and stated that her earning capacity was very low. Mr. Jones income and earning capacity were high. The court considered Mr. Jones' 2000 income tax return showing income of approximately $94,000.00. The court found the income and expense statements of each party to be somewhat inflated, but then said that Mrs. Jones' expense statement was reasonable and "consistent with Mr. Jones' expense statement as well as the apparent lifestyle that the two were accustomed to while married." The court found that Mr. Jones' income was sufficient to sustain his expenses as well as those of his former wife. The court ordered Mr. Jones to pay Mrs. Jones $2,000.00 per month in final periodic support. Mr. Jones appealed, arguing that the trial court erred in finding that Mrs. Jones was free of fault and entitled to receive final periodic spousal support. In the alternative, he argues that the amount of support is excessive.

FAULT
Mr. Jones contends that his former spouse did not carry her burden of proving that she was free from fault in the breakup of the marriage. He claims that the trial court failed to consider the applicable burden of proof regarding fault and made an incorrect legal determination on that issue.
Mr. Jones contends that Mrs. Jones had a history of violent behavior toward him and that on the day he left, she hit him, gave him a bloody nose and told him to leave. He argues that physical violence on the part of the wife toward the husband is sufficient fault to preclude her from receiving final periodic spousal support. He also claims that she refused to engage in a sexual relationship with him for 2½ years before she forced him out of the family home. He says that she gambled and frequently ran up large credit card bills. He also contends that she frequently overdrew their checking account. According to Mr. Jones, at the very least, the actions of the parties should be described as mutual fault sufficient to preclude Mrs. Jones from receiving final periodic support. These arguments are without merit.
In a proceeding for divorce or thereafter, the court may award interim periodic support to a party or may award final periodic support to a party free from fault prior to the filing of a proceeding to terminate the marriage, based on the needs of that party and the ability of the other party to pay. La. C.C. art. 111. A spouse seeking final spousal support must be without fault and the burden of proof is upon the claimant. Lyons v. Lyons, 33,237 (La.App.2d Cir.10/10/00), 768 So.2d 853, writ denied, XXXX-XXXX (La.1/5/01), 778 So.2d 1142. Since the statutory law does not specify fault which would deny final periodic spousal support, legal fault must be determined according to prior jurisprudential criteria. Allen v. Allen, 94-1090 (La.12/12/94), 648 So.2d 359. Legal fault consists of serious misconduct which is a cause of the dissolution of the marriage. To be legally at fault, a spouse must be guilty of cruel treatment or excesses which compel a separation because the marriage is insupportable. A spouse who petitions for permanent support need not be totally blameless in the marital discord. Only misconduct of a serious nature, providing an independent contributory or proximate *165 cause of the breakup, equates to legal fault. Lyons v. Lyons, supra.
The unjustifiable persistent refusal of sexual intercourse to one's spouse is cruel treatment constituting fault. Broussard v. Broussard, 462 So.2d 1386 (La.App. 3d Cir.1985). While mere bickering and fussing cannot constitute cruel treatment for purposes of denying alimony, a continued pattern of mental harassment, nagging and griping by one spouse directed at the other can constitute cruel treatment. Lyons v. Lyons, supra.
A party is not deprived of alimony due to a reasonably justifiable response to the other spouse's initial acts. A spouse who perceives infidelity may become quarrelsome or hostile. Such a reasonable reaction does not constitute legal fault. The suspicion of adultery causes the break up and not the reaction. A spouse who reacts should not be precluded from receiving alimony solely because of his or her own response. Lyons v. Lyons, supra.
The trial court has vast discretion in matters regarding determination of fault for purposes of preclusion from final periodic support. The trial judge's finding of fact on the issue of fault will not be disturbed unless manifestly erroneous. Lyons v. Lyons, supra. Even though an appellate court may feel its own evaluations are more reasonable than the factfinder's, reasonable evaluations of credibility should not be disturbed where conflict exists in testimony. Carr v. Carr, 33-167 (La.App.2d Cir.4/5/00), 756 So.2d 639.
Mrs. Jones denied ever being physically abusive to her husband, but said that she defended herself when he struck her. She also stated that she did not demand that her husband leave the home. She denied spending extravagantly or overdrawing the checking account. She presented testimony from friends that she was a good wife and mother.
According to Mrs. Jones, she ended her sexual relationship with Mr. Jones in 1998, largely due to her suspicion that Mr. Jones was having an affair. Mrs. Jones contended that Mr. Jones infected her with a sexually transmitted disease. The details of this allegation were conveyed to the trial court in a bench conference that was not transcribed by the court reporter. The trial judge made a statement on the record at the close of evidence as to what she was told by Mrs. Jones. Mrs. Jones verified on the record what she told the judge.
The parties differ in their versions of the events leading up to Mr. Jones' permanent departure from the matrimonial domicile. He contends that he was out of town on the Labor Day weekend. He stated that he left his wife a note telling her that he was going to a casino. Mr. Jones testified that he was gone for 48 hours and did not sleep during that time. He denied that the other woman was with him. When he came home to change clothes and pay bills, he said that Mrs. Jones physically attacked him, gave him a bloody nose, and ordered him to leave. However, in later questioning about this incident, Mr. Jones testified that he decided to leave because he "had enough of that arguing and fighting" and did not want it to escalate to the point that one or both of them would "get really physically hurt more." As to leaving, Mr. Jones stated, "I felt it was in the best interest I did it."
Regarding the day that Mr. Jones left the matrimonial domicile, Mrs. Jones stated that her former husband had been gone for awhile without letting her know where he was. She was suspicious that he had been with his paramour. While the parties had a physical altercation on that day, *166 Mrs. Jones denies initiating it, as Mr. Jones claims. She was upset over what she perceived to be her husband's continued infidelity.
According to Mrs. Jones, the reason for the failure of the marriage was Mr. Jones' extramarital affair. She presented the testimony of a private investigator to show that Mr. Jones was having an affair. After he left this wife, Mr. Jones purchased another house and began living with the other woman and her four children. He does not deny the affair. Mrs. Jones also claimed that Mr. Jones was a gambler and that he was physically abusive.
Mrs. Jones consistently asserted that she never initiated a physical altercation with her husband, but acted only in self-defense. As stated above, hostility and becoming quarrelsome are reasonable reactions to infidelity. She denied demanding that he leave the matrimonial domicile. She did not unjustifiably deny her husband sexual intercourse, but did so on the belief that he was having an affair and after infecting her with a sexually transmitted disease. Further, the record does not show that Mrs. Jones' spending was extravagant or that she gambled excessively.
The decision as to whether Mrs. Jones is guilty of fault turns largely upon credibility determinations by the trier of fact. Based upon the record before us, we find that the trial court's credibility determinations were reasonable. The trial court was not manifestly erroneous in finding that Mrs. Jones did not commit conduct of such a nature as to provide an independent contributory or proximate cause of the break up of the marriage. Accordingly, we affirm that portion of the trial court judgment finding Mrs. Jones to be free of fault.

AMOUNT OF FINAL PERIODIC SUPPORT
Mr. Jones argues that the trial court award of $2,000.00 per month in final periodic support is excessive. He contends that this amount exceeds one-third of his net monthly income, a result prohibited by La. C.C. art. 112(B). He also claims that the award exceeds the needs of Mrs. Jones and takes into account expenses which may not be claimed in awarding final periodic support. These arguments have merit.
La. C.C. art. 112B provides that the sum awarded for final periodic support shall not exceed one-third of the obligor's net income. Mr. Jones correctly argues that the trial court award of $2,000.00 per month exceeds one-third of his net income. The trial court stated that the award of final periodic spousal support was based upon Mr. Jones' earnings in 2000. His 2 form shows income of $94,578.03. Mr. Jones' pay records show that in 2000, he had tax deductions in the amount of $31,541.32, leaving a net income of $63,036.71. His monthly net income was $5,253.06. One-third of this amount is $1,751.02. This is the maximum amount of final periodic support that may be awarded in this case. Therefore, the trial court award of $2,000.00 per month in final periodic spousal support exceeds the maximum and must be amended.
We next turn to a determination of an appropriate award in this case, particularly in light of Mr. Jones' arguments that the trial court took into account expenses which are not properly considered and exceed the needs of Mrs. Jones. In 1997, La. C.C. arts. 111 and 112, pertaining to periodic spousal support, were amended, reenacted and became effective on January 1, 1998. The parties filed their respective petitions for divorce and support after this date and therefore, the new provisions *167 apply.[2] Regarding the amount of support to be awarded, La. C.C. art. 112 provides:
A. The court must consider all relevant factors in determining the entitlement, amount, and duration of final support. Those factors may include:
(1) The needs of the parties.
(2) The income and means of the parties, including the liquidity of such means.
(3) The financial obligations of the parties.
(4) The earning capacity of the parties.
(5) The effect of custody of children upon a party's earning capacity.
(6) The time necessary for the claimant to acquire appropriate education, training, or employment.
(7) The health and age of the parties.
(8) The duration of the marriage.
(9) The tax consequences to either or both parties.
B. The sum awarded under this Article shall not exceed one-third of the obligor's net income.
The cases of Hammack v. Hammack, 99-2809 (La.App. 1st Cir.12/22/00), 778 So.2d 70, writ denied, XXXX-XXXX (La.5/25/01), 793 So.2d 166, and Brett v. Brett, XXXX-XXXX (La.App. 1st Cir.5/30/01), 794 So.2d 912, considered the changes in the law brought about by the amendment. The first circuit recognized that, under the old law, a party claiming permanent spousal support was limited to an amount sufficient for the spouse's maintenance. Therefore, after proving freedom from fault, the spouse claiming support also had to prove insufficient means for support. However, under the present law, the requirement that a claimant spouse prove insufficient means for support has been deleted. The claimant spouse now only has to prove freedom from fault in order to qualify for periodic spousal support. The requirement that the claimant spouse also prove that he or she does not have sufficient means for support is no longer included in the statutory language as a threshold criteria for entitlement to support. Hence, the statutory basis for limiting support to a spouse in necessitous circumstances no longer exists. Hammack v. Hammack, supra.
As noted in Kenneth Rigby, The 1997 Spousal Support Act, 58 La. L.Rev. 887 (1998), the amendment to La. C.C. arts. 111 and 112 did away with the distinction between alimony pendente lite and permanent periodic support. The basic test for the amount of spousal support to be *168 awarded are the needs of the claimant spouse and the ability of the other spouse to pay.
Also, it is not settled under the new codal scheme whether the standard of living enjoyed by the parties before the separation and divorce may be considered in setting an amount for spousal support. The law review article states as follows:
Two factors recommended by the Law Institute were not adopted by the legislature. The Law Institute recommended, as a factor to be considered in determining the entitlement, amount, and duration of final support, the standard of living of the parties during the marriage. Several decisions had held that the lifestyle of the parties during the marriage is relevant in determining what is necessary for support of the party requesting permanent periodic alimony. The proposal would have codified this jurisprudence. Although rejected as a specific factor which the court may consider, courts are not prohibited by the new legislation from considering the standard of living of the parties as a relevant factor in determining the entitlement, amount, and duration of final support. The court is not limited to considering the nine listed factors; Article 112 mandates the court to consider all relevant factors, and that these factors may include the nine listed factors. However, courts may decide, because the legislature eliminated the standard of living of the parties as one of the specified statutory factors that may be considered, that this expresses the legislative intent that this factor may not be considered by the court. [Footnotes omitted.]
The first circuit found that the standard of living of the parties was a relevant factor to be considered by the trial court. Brett v. Brett, supra.
In formulating an appropriate award for final spousal support in this case, we will consider the needs of Mrs. Jones, the means of Mr. Jones, and all relevant factors, including those enumerated in La. C.C. art. 112 which are applicable here.
At the time of the hearing, Mrs. Jones was 50 years old and had a high school education. She had previously worked as a sales clerk and had been employed for fifteen years at a flower shop on a parttime basis, earning only a few hundred dollars per month. She testified that although she had tried, she could not get other employment. The parties were married for twenty-nine years and Mrs. Jones largely stayed at home during the marriage, in accordance with Mr. Jones' wishes. Mrs. Jones testified that she could not meet her monthly expenses and was relying upon help from relatives. Mrs. Jones submitted the following list of her expenses:

Chase Mortgage (house note) $ 232.00
Entergy 400.00
Greater Ouachita Water Company 50.00
Bell South 80.00
Groceries and household items 350.00
Gateway (garbage pickup) 20.00
Newspaper 7.16
Lawn care 70.00
Stewart Insurance Company
 (house insurance) 100.00
Century Tel Protection System 16.67
Car gasoline 120.00
Car maintenance 50.00
Beauty Salon 70.00
Security Insurance (life insurance) 50.00
American Deposit Insurance Company 270.00
Clothing (self and child) 200.00
Medical/dental/drugs 200.00
Entertainment 60.00
School expenses and activities
 (college for Sophia) 150.00
Household maintenance 100.00
 _________
TOTAL $2,595.83

Mr. Jones outlined his monthly living expenses of $4,752.36 and testified that following the divorce, he purchased a $186,000.00 house and has a monthly mortgage note of $1,421.45.
Mr. Jones contends that his former wife's monthly expense account contains *169 several items which are not properly considered in awarding permanent support. He cites Goodnight v. Goodnight, 98-1892 (La.App.3d 5/5/99), 735 So.2d 809, decided under the prior version of La. C.C. art. 112, for the proposition that permanent support is to be awarded in an amount sufficient for maintenance and not to be awarded to maintain an accustomed lifestyle. He contends that the award is to include only basic necessities such as food, shelter, clothing, transportation, medical care, and income tax liability caused by alimony payment, but does not include expenditures for newspapers, gifts, recreation, vacation and church tithes. In this case, he argues that Mrs. Jones' claimed expenses for newspaper, lawn care, home security system, beauty salon, life insurance, entertainment, and school expenses do not fall into the category of expenditures that may be included in the calculation for spousal support. He also questions the expenses for house insurance, car insurance, clothing for Mrs. Jones and their adult daughter, medical, dental and drug expenses, and household maintenance. He argues these items either are not paid by Mrs. Jones, are not solely her expenses, or are not factually supported by the record. He claims that Mrs. Jones does not have a separate expense for house insurance because the house note includes this expense. He claims that Mrs. Jones' expense list contains $1,035.11 in amounts that may not be claimed or were not proven. He also notes that Mrs. Jones earns $150.00 to $250.00 per month, tax-free for her parttime work in a flower shop. Under Mr. Jones' calculations, the proper award for his former spouse is $764.89 per month.[3]
Mrs. Jones concedes that expenses for newspaper, life insurance, entertainment and school costs for their grown daughter, are not allowable. However, she argues that hair styling and lawn care are allowable expenses and she contends that the security system is a necessary expense.
In examining the record, we find that Mrs. Jones sought to claim car insurance, not only for herself, but also for the parties' grown daughter. The monthly charge for Mrs. Jones' car insurance is $105.88. Mrs. Jones claimed $200 per month in clothing expenses for herself and the parties' daughter. Clearly, the daughter's clothing expense is not allowed. Since Ms. Jones did not designate her individual expense, we assume that it is one-half the amount claimed, i.e., $100. The parties disagreed as to whether the insurance on Ms. Jones' house was included in the mortgage note. Because no documentary proof of an additional expenditure appears in the record, for the sake of this calculation, we will assume that it was included, as argued by Mr. Jones. We also delete allowances for newspaper, life insurance, entertainment, and college expenses for the parties' adult daughter, because Mrs. Jones concedes that these expenses are not allowable. Additionally, we take into consideration the approximately $200.00 per month earned by Mrs. Jones for her work at the flower shop. We find the other claimed expenses to be reasonable in light of all the relevant factors in this case. Therefore, Mrs. Jones has allowable expenses of $1,764.54.[4] Because this exceeds the maximum *170 allowable amount, we reduce the award to $1,751.02. We recognize that this amount, combined with Mr. Jones' monthly expenses somewhat exceeds his reported net income. We also note that Mr. Jones recently chose to purchase a relatively expensive house, incurring a significant monthly mortgage payment. Accordingly, in light of all relevant factors, including the income and expenses of Mr. Jones, we find the award of $1,751.02 to be appropriate.

CONCLUSION
For the reasons stated above, we affirm that portion of the trial court judgment finding Evelyn J. Jones to be free from fault. We amend the amount to be awarded and order that John H. Jones is to pay to Evelyn J. Jones, $1,751.02 per month in final periodic support. The trial court judgment is affirmed in all other respects. Costs in this court are assessed one-half to John H. Jones and one-half to Evelyn J. Jones.
AFFIRMED IN PART; AMENDED IN PART; AFFIRMED AS AMENDED.
NOTES
[1] These matters were consolidated in the trial court and a divorce was granted on May 17, 2000.
[2] Former La. C.C. art. 112 provided in pertinent part:

A. (1) When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, permanent periodic alimony which shall not exceed one-third of his or her income....
(2) In determining the entitlement and amount of alimony after divorce, the court shall consider:
(a) The income, means, and assets of the spouses;
(b) The liquidity of such assets;
(c) The financial obligations of the spouses, including their earning capacity;
(d) The effect of custody of children of the marriage upon the spouse's earning capacity;
(e) The time necessary for the recipient to acquire appropriate education, training, or employment;
(f) The health and age of the parties and their obligations to support or care for dependent children;and
(g) Any other circumstances that the court deems relevant.
(3) In determining whether the claimant spouse is entitled to alimony, the court shall consider his or her earning capacity, in light of all other circumstances.
[3] Mr. Jones argues that, at trial, Mrs. Jones only requested a monthly support award of $1,500.00. The record does not support this argument and shows that Mrs. Jones requested at least $1,500.00 per month in support.
[4] The allowable expenses are calculated as follows:

Chase Mortgage (house note) $232.00
Entergy 400.00
Greater Ouachita Water Company 50.00
Bell South 80.00
Groceries and household items 350.00
Gateway (garbage pickup) 20.00
Lawn care 70.00
Century Tel Protection System 16.67
Car gasoline 120.00
Car maintenance 50.00
Beauty Salon 70.00
American Deposit Insurance
 Company 105.88
Clothing 100.00
Medical/dental/drugs 200.00
Household maintenance 100.00
 _________
SUBTOTAL $ 1964.54
Minus earnings - 200.00
 _________
TOTAL $1,764.54